WEIDER *v.* GOLDSMITH.

NEGLIGENCE—LANDOWNERS—REMOVAL OF SNOW FROM SIDEWALK—
INCREASE OF HAZARD.

> Action of landowner in removing snow from sidewalk in front
> of property, even when it results in an accumulation of snow
> and ice at upheavals in the sidewalk from subsequent snow-
> falls, would not render the defendant landowner liable for
> injuries to persons passing over the sidewalk, in the absence
> of evidence that the cleaning efforts themselves had made the
> situation more slippery or hazardous than it would have been
> had they not been made.

Appeal from Wayne; Martin (Rex B.), J., presid-
ing. Submitted April 16, 1958. (Docket No. 32, Cal-
endar No. 47,453.) Decided July 15, 1958. Rehear-
ing denied September 9, 1958.

Case by Joseph Weider against David Goldsmith
and Sylvia Goldsmith for damages resulting from
fall on icy sidewalk. Judgment for defendants not-
withstanding verdict. Plaintiff appeals. Affirmed.

*Philip Weiss* and *Jesse R. Bacalis,* for plaintiff.

*Moll, Desenberg, Purdy & Glover,* for defendants.

SMITH, J. The plaintiff before us was injured in a
fall suffered on the public sidewalk in front of the
defendants' property. It happened in February and
the walk was not free of snow and ice.

---

REFERENCES FOR POINTS IN HEADNOTES
25 Am Jur, Highways § 522.

Plaintiff Joseph Weider was a tenant in the defendants' apartment building at 2548 Second avenue in Detroit. It was his habit to leave his apartment about 6 a.m. every weekday morning to catch a bus to work.

On Monday, February 14, 1955, two inches of snow had fallen in Detroit. We will assume that defendants' caretaker, Mrs. Crum, as was her custom, shoveled away the accumulation on the public walk in front of the apartment house and on the private sidewalk leading up to the building.*

There was no snow the next day, Tuesday. However, by the time Mr. Weider went to work on Wednesday morning, February 16, 1955, another light snowfall was descending. After plaintiff reached the main sidewalk he slipped on a patch of snow and ice that had formed at the base of a 3- or 4-inch "heave" in the paving. (This hump in the walk had been there, to plaintiff's knowledge, ever since he had lived in the apartment house.) The resultant fall broke Mr. Weider's hip, permanently disabling him. The jury awarded $92,000 damages. The trial court granted defendants' motion for judgment *non obstante veredicto* and plaintiff is before us on a general appeal. Defendants have cross-appealed, in part, with respect to the instructions to the jury.

The primary issue on appeal may well be put in the terms employed in appellant's brief:

"Appellant in this action relies on the theory that the appellees, in their act of shoveling the sidewalk at the heave added an unnatural hazard, one which was over and above and beyond the natural hazard of the free fall of the snow and the ice. Appellant believes that once the landowner starts to remove the

---

* There is no direct testimony that on that particular day Mrs. Crum or anyone else connected with the defendants did the shoveling. The lower court's opinion fairly summarizes the testimony. "She did not remember whether she had done it after the snowfall on February 14th and 15th. Maybe her husband did it."

snow from the sidewalk regardless of whether or not
he is under a duty to do so, he is bound to do so in a
careful manner so as not to add any additional haz-
ard over and beyond the natural hazard of the free
fall of the snow and the ice."

The theory relied upon, then, is one of increase of
hazard. The *sine qua non* of this doctrine is that a
new element of danger, not theretofore present, be
introduced by the acts of the defendants. Clear ex-
pression of this requirement is found in numerous
cases. Thus, in *Taggart* v. *Bouldin,* 111 NJL 464,
468 (168 A 570), the snow which had been banked on
either side of the sidewalk by defendant's shoveling,
later melted and froze on the walk. In upholding
the lower court's nonsuit of plaintiff the court said:

"The action of the defendant, in having the side-
walk shoveled off, introduced no new element of
danger; rather the opposite resulted and the danger
was lessened.   *   *   *   Since this be so, to hold a
property owner answerable in damages, for injuries
received because an effort is made to keep the side-
walk clear and to reduce the danger to pedestrians,
would result in a hardship and an injustice."

In an almost identical situation in Illinois, report-
ed in *Riccitelli* v. *Sternfeld,* 349 Ill App 63, 66, 67
(109 NE2d 921), the court reversed a jury verdict
for plaintiff, saying in part:

"Heavy snowfalls create emergency conditions and
a generally hazardous situation throughout this city.
There have been occasions in which the entire citi-
zenry has been mobilized to make paths along side-
walks and to clear streets for traffic.   *   *   *   In one
sense, a dangerous situation is created, but much less
dangerous than would be created if no one under-
took to do anything. Plaintiff argues that if de-
fendant had not undertaken to clear a path and if
his employees had not piled up the snow, conditions
would have been better than they were at the time of

the accident. This is conjectural. The general as-
sumption is that the industry displayed by citizens
removing snow after a snowfall is desirable, if not
necessary. The water which froze and produced the
lump of ice on which plaintiff fell, came from natural
causes. It cannot be said to have arisen from any-
thing defendant did, other than removing the snow
obstructing his driveway and making a path on the
sidewalk for pedestrians. That in so doing he may
have piled some snow from the driveway onto the
piles banked along the walk is not the type of act upon
which liability in a case of this character may be
predicated."

See, also, *Mahoney* v. *Perreault* (1931), 275 Mass
251 (175 NE 467).

In *Herrick* v. *Grand Union Co.* (1956), 1 App Div
2d 911 (149 NYS2d 682), the defendant, in cleaning
the walk after passing pedestrians had packed down
much of the snow, was able only to remove the loose
snow on top. The court, *per curiam* (in upholding
an involuntary nonsuit), said in part:

"The rule is that a failure to get all the snow and
ice off the walk is not negligence. * * * The claim
of increased hazard in the case before us is not sup-
ported by substantial evidence on the record viewed
as a whole. It is not shown that the shoveling or
scraping of the loose snow actually made the existing
mass of ice and snow any more slippery or hazardous
than it had been. Nor is it established by any definite
factual observation what the result was of the loose
snow dropping off as it was shoveled or that this
actually affected or increased the existing hazard."

The case before us is clearly distinguishable from
such cases as *Betts* v. *Carpenter,* 239 Mich 260, where
ice and water did not get on the sidewalk from nat-
ural causes but "were turned onto a public sidewalk
by artificial means," and *Woodley* v. *Lancaster,* 307
Mich 473, involving a similar situation.

The requirement, as above stated, being that the defendants' act of attempted removal of the snow must have increased the hazard, must have introduced a new element of danger not theretofore present, we turn to the proofs for exposition thereof. Plaintiff himself testified that in his experience in clearing snow off walks "when it had a heave or a crack in it," that he "couldn't get that snow off. * * * It was solid on account of the cracks and the heave. You couldn't shovel there, and then, the cracks—cracked spot, it is piled more on top. You just can't shovel over top." Eva Crum testified that the heave in the sidewalk presented difficulties in cleaning it of snow and ice and plaintiff testified that there were "blotches" of snow remaining on Monday, February 14th. Plaintiff also testified that ice had accumulated at the "heave," which was where he fell.

In none of this is there any evidence whatever that the attempted cleaning of the sidewalk increased the hazards of travel thereon. Viewing the testimony in the light most favorable to plaintiff it shows merely that he fell on a public sidewalk many hours after an attempted cleaning of one fall of snow and during the course of a second. The fact of ice on a public sidewalk at this time and under these circumstances does not prove, or even support a reasonable inference, that the attempted cleaning itself, as distinguished from the normal operation of the forces of nature upon this sidewalk, or the effects of travel thereon by pedestrians, created the ice patch at the crack and thus increased normal hazards, or caused thereat an artificial accumulation of ice.

The holding in the case of *Golub* v. *City of New York,* 201 Misc 866, 868, 869 (112 NYS2d 161, 163), is particularly appropriate to the facts before us:

"The precise issue raised in this case is whether an abutting owner is liable for an ice condition remaining or arising after a snow and ice removal op-

eration, without a showing that that ice condition, assuming it to be hazardous, was caused directly or indirectly by defendant through some affirmative act or omission.

"None of the authorities examined by the court goes that far. In each case where plaintiff has been permitted to recover against an abutting owner, the ice condition following snow and ice removal was either directly or indirectly the result of an act or omission by the abutting owner. On the other hand mere incompleteness of snow or ice removal, or unexplained presence of ice or snow after snow or ice removal, have resulted in the discharge of the defendant as a matter of law. * * *

"In the instant case there is even a graver hiatus in plaintiff's proof. As indicated, there was no evidence that the ice patch was residual to an incomplete cleaning operation or that it was placed there, directly or indirectly, by defendant, let alone that it had been altered by defendant to create a dangerous condition."

Under the view we have taken of the case there is no need to discuss additional issues raised by both parties.

Affirmed. Costs to appellee.

Dethmers, C. J., and Carr, Kelly, Black, Edwards, Voelker, and Kavanagh, JJ., concurred.