QUINLIVAN v THE GREAT ATLANTIC & PACIFIC TEA
COMPANY, INC

Docket No. 55883. Argued June 5, 1975 (Calendar No. 12.—Decided
November 25, 1975. Rehearing denied 395 Mich 923.

Larry E. Quinlivan and Lois Quinlivan brought an action against
The Great Atlantic & Pacific Tea Company, Inc.; and Clarence
Jahn and Dorthea Jahn for injuries sustained when Larry
Quinlivan fell on the snow-covered and icy parking lot of a
shopping center owned by defendants Jahn in which defendant
A & P maintained its store. A & P cross-claimed for indemnifi-
cation against defendants Jahn under the lease. Prior to trial,
the Wayne Circuit Court, Neal E. Fitzgerald, J., entered a
summary judgment of indemnification in favor of defendant A
& P on the cross-claim. At a trial before the Wayne Circuit
Court, Charles S. Farmer, J., the jury awarded plaintiffs a
verdict of $160,000 against defendant A & P and found no
cause of action as to defendants Jahn. The Court of Appeals,
V. J. Brennan, P. J., and Quinn and Carland, JJ., reversed as to
defendant A & P (Docket Nos. 15605, 16066). Plaintiffs appeal.
*Held:*

1. An invitor owes a legal duty to an invitee to take reasona-
ble measures within a reasonable time after an accumulation of
ice and snow to diminish the hazard of injury to the invitee.
The conduct of the invitee will often be relevant to contribu-
tory negligence.

2. An invitor in general owes the legal duty to an invitee to
exercise reasonable care for the invitee's safety, but existing
case law appears to have made an exception to the general rule
with respect to natural accumulations of ice and snow, so that
as to natural accumulations the invitor owes no duty. Pre-
existing case law, to the extent that it indicates that the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5] 62 Am Jur 2d, Premises Liability § 272 *et seq.*

[3, 6] 49 Am Jur 2d, Landlord and Tenant §§ 822, 823.

Landlord's liability for injury or death due to ice or snow in areas
or passageways used in common by tenants. 26 ALR2d 610.

[4] 62 Am Jur 2d, Premises Liability § 62 *et seq.*

natural accumulation rule applies to the invitor-invitee relationship, is overruled.

3. In the instant case, A & P, as proprietor of a business, owed a duty to plaintiff to use reasonable care to protect against hazards arising from natural accumulation of ice and snow. The jury were given conflicting instructions indicating both the rigorous duty owed plaintiff as an invitee and the "natural accumulation" exception. The jury, in returning a verdict for plaintiff, must have recognized that the exception did not circumvent the duty owed plaintiff as an invitee. The jury could permissibly have determined from the evidence that A & P's failure to exercise reasonable care caused plaintiff's injuries.

4. The summary judgment of indemnification against defendants Jahn in accordance with the terms of the lease between defendant A & P and the Jahns was proper. The governing principle is that when a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition which, as between the two, it was the other's duty to make safe, he is entitled to restitution from the other for expenditures properly made in the discharge of liability, unless after discovery of the danger he acquiesced in the continuation of the condition. Under the lease between A & P and defendants Jahn, the Jahns were to assume responsibility for providing ice and snow removal on the parking lot. Thus under the lease the Jahns were given the necessary control and possession to give rise to a duty on their part to make the parking lot safe against hazards from ice and snow accumulation.

5. The judgments below are reinstated.

51 Mich App 242; 214 NW2d 911 (1974) reversed.

1. NEGLIGENCE—BUSINESS INVITEES—PARKING LOTS—SNOW AND ICE.

A supermarket, as proprietor of a business, owed a duty to a business invitee to use reasonable care to protect the invitee against hazards arising from the natural accumulation of ice and snow.

2. NEGLIGENCE—BUSINESS INVITEES—SNOW AND ICE—OVERRULED CASES.

Existing case law is overruled to the extent that it indicates, and has been interpreted to indicate, that no duty is owed to a business invitee respecting hazards arising from natural accumulations of ice and snow.

3. INDEMNITY—SUMMARY JUDGMENT—LANDLORD AND TENANT—BUSI-
   NESS INVITEES—SNOW AND ICE—LEASES.

    Summary judgment of indemnification in favor of a tenant was
   rendered properly against the landlord where a business invi-
   tee slipped and fell on a snow-covered and icy parking lot
   adjacent to the tenant's store and, under the lease, the landlord
   undertook responsibility for removal of ice and snow hazard in
   the parking lot; the lease placed the requisite control and
   possession in the landlord to give rise to a duty to make safe
   the area of the parking lot against hazards from ice and snow
   accumulation.

4. NEGLIGENCE—POSSESSORS OF LAND—BUSINESS INVITEES.

    A possessor of land is subject to liability for physical harm caused
   to his invitees by a condition on the land, if, but only if, he (a)
   knows or by the exercise of reasonable care would discover the
   condition, and should realize that it involves an unreasonable
   risk of harm to such invitees, and (b) should expect that they
   will not discover or realize the danger, or will fail to protect
   themselves against it, and (c) fails to exercise reasonable care
   to protect them against the danger.

5. NEGLIGENCE—BUSINESS INVITEES—SNOW AND ICE.

    An invitor has a duty to business invitees to exercise reasonable
   care to diminish the hazards of ice and snow accumulation
   which requires that reasonable measures be taken within a
   reasonable time after an accumulation of ice and snow to
   diminish the hazard of injury to the invitee; the notion that ice
   and snow hazards are obvious to all and therefore may not give
   rise to liability is rejected.

6. INDEMNITY—CONTRACTS—LEASE—LANDLORD AND TENANT—SNOW
   AND ICE.

    Although no express contract of indemnification is in a lease, a
   right to indemnification may be said to arise if the lease
   provisions establish that the landlord assumed a duty to make
   safe the area of a parking lot against hazards from ice and
   snow accumulation.

*Theodore M. Rosenberg (Harry Riseman,* of
counsel), for plaintiffs.

*Neenan & Gugel,* for defendants Clarence and
Dorthea Jahn.

*Vandeveer, Doelle, Garzia, Tonkin & Kerr (Haggerty & Franklin,* of counsel), for The Great Atlantic & Pacific Tea Company, Inc.

Amicus Curiae: *Reamon, Williams, Klukowski & Craft, P. C. (Stephen R. Drew,* of counsel), for Harvey Ferrel and Helen Ferrel.

J. W. FITZGERALD, J. Plaintiffs[1] brought suit against defendant A & P and defendants Jahn for injuries sustained in the fall on the parking lot of a shopping center owned by defendants Jahn in which defendant A & P maintained its store. A & P filed a cross-complaint against the Jahns as lessors of the A & P premises on the basis that the Jahns were under a duty to indemnify A & P pursuant to the terms of the lease between the parties.

Evidence submitted at trial by plaintiffs indicated that on the evening of January 30, 1967, Larry Quinlivan parked his automobile in the parking lot adjacent to the A & P store intending to buy some milk and bread at the A & P. The parking lot was snow-covered and icy, although snow had not fallen for several days. After departing his automobile, plaintiff took several steps in the direction of the A & P store and then felt his feet fly out from under him. He landed on his hip area and shortly thereafter was transported to the hospital by ambulance. Subsequent to the accident, Larry Quinlivan was operated upon several times. As a result of these events he suffered physical and mental disablement with attendant disintegrating effect upon his employment capability and family life.

---

[1] Plaintiff Larry Quinlivan died subsequent to trial on August 5, 1974. His wife was thereafter substituted in his stead as plaintiff in her capacity as administratrix of his estate.

Plaintiffs allege that defendants negligently permitted a dangerous icy condition to exist in the parking lot area. Such negligence, it was urged, caused plaintiff's injuries. Prior to trial, the trial court entered a summary judgment of indemnification in favor of defendant A & P against defendants Jahn. The jury ultimately awarded plaintiffs a verdict of $160,000[2] against defendant A & P, finding no cause of action as to defendants Jahn. The Court of Appeals reversed the jury award against defendant A & P, relying upon *Weider v Goldsmith,* 353 Mich 339; 91 NW2d 283 (1958). The Court of Appeals resolution rendered discussion of the indemnification issue unnecessary.

We conclude that A & P, as proprietor of a business, owed a duty to Larry Quinlivan to use reasonable care to protect against hazards arising from natural accumulation of ice and snow. We overrule existing case law to the extent that it indicates, and has been interpreted to indicate, that no duty is owed the invitee respecting hazards arising from natural accumulations of ice and snow. The jury verdict against defendant A & P was rendered properly. We further conclude that summary judgment of indemnification was rendered properly against defendants Jahn in accordance with the terms of the lease between defendant A & P and the Jahns. The Court of Appeals is reversed and the judgments below are reinstated.

## I—STANDARD OF CARE OWED AN INVITEE VIS-A-VIS NATURAL ACCUMULATIONS OF ICE AND SNOW.

At trial, both defendant A & P and defendants Jahn conceded that they owed some duty to exercise reasonable care to Larry Quinlivan as an

---

[2] $135,000 in favor of Larry Quinlivan and $25,000 in favor of Lois Quinlivan.

invitee on the shopping center premises. The precise nature of the duty owed plaintiff and the relationship of such duty to the alleged injury-causing condition of the parking lot was not specified on the record.

The trial court gave jury instructions which read in part as follows:

"I charge you, members of the jury, that the defendants, the Great Atlantic & Pacific Tea Company, and the Jahns, owed to the plaintiff the duty to be reasonably sure they were not inviting him into a place of danger, and to that end they must exercise ordinary care and prudence to render the parking lot premises reasonably safe for plaintiff's visit.

"I further charge you, members of the jury, that while the A & P is not an insurer of safety of an invitee, if the A & P Company knows, or reasonably should know of a dangerous condition on its premises, it may become liable for injuries resulting therefrom, and it may not delegate the responsibilities to another and thus escape liability.

"I further charge you, members of the jury, that a landowner is not liable to his invitees for injuries caused by the landowner's failure to remove natural accumulations of ice and snow from a normal outdoor unobstructed sidewalk or premises.[3]

"I further charge you that a possessor of land is subject to liability for bodily harm caused to business visitors by natural or artificial conditions thereon, if, but only if, he or she knows, or by the exercise of reasonable care could discover, the conditions which, if known to him, he should realize is involving an unreasonable risk to said business visitors."

Before the jury began deliberations, defendant A & P moved for directed verdict on the basis that the proofs showed that the condition existing in

[3] For reasons indicated in the analysis which follows, we do not approve this instruction.

the shopping center parking lot to be attributable
solely to natural accumulation of ice and snow.
Thus, it was argued, under the law defendants
were absolved of any causal negligence. The trial
court denied defendant's motion, commenting that:

"Whether or not it is a normal or natural accumula-
tion of snow, it is still up to the jury to make a
determination as to whether or not the defendants used
that degree of care that is necessary and required of
them to make sure that the dangerous condition, or no
defect existed. I think the mere fact that it could have
been a natural or normal accumulation does not neces-
sarily negate the duties imposed on all the parties here,
especially on [A & P]."

When A & P renewed its contention in the form of
a motion for judgment notwithstanding the verdict
and later upon motion for new trial, it was again
rejected by the trial court.

The Court of Appeals essentially agreed with the
position set forth by A & P in the trial court,
concluding:

"Assuming that someone did something by way of
snow removal, this record fails to disclose any affirma-
tive act by A & P which increased the hazard created
by the natural accumulation of snow and ice or that
created a new hazard. Absent such proof, A & P is not
liable for the injuries sustained by Larry E. Quinlivan
or the derivative damages sustained by his wife due to
such injuries. *Weider v Goldsmith,* 353 Mich 339; 91
NW2d 283 (1958)."[4]

The issue before us—aptly framed by the dispa-
rate positions taken by the adversaries and the
courts below—requires our crystallization of the
legal relationship between conditions upon prop-

---

[4] 51 Mich App 242, 244; 214 NW2d 911 (1974).

erty arising as a result of natural accumulation of ice and snow and a business proprietor's and landowner's duty to exercise reasonable care for the safety of an invitee.

This Court in *Torma v Montgomery Ward & Co,* 336 Mich 468; 58 NW2d 149 (1953), considered the circumstance of injury occurring to plaintiff, a business invitee, when she fell upon an icy angle iron at the entrance to defendant's store. A verdict for plaintiff resulted. On appeal, defendant, not unlike defendant A & P herein, alleged that plaintiff failed to establish a prima facie case of liability on the part of the defendant.[5] In disagreeing with defendants' contention, this Court stated:

"As invitor the defendant owed the duty to its customers and patrons, including the plaintiff, of maintaining its premises in a reasonably safe condition and of exercising due care to prevent and to obviate the existence of a situation, known to it or that should have been known, that might result in injury. In *Blakeley v White Star Line,* 154 Mich 635 (19 LRA NS 772, 129 Am St Rep 496) [1908], this Court quoted with approval from Cooley on Torts, p 605, as follows:

" ' "One is under no obligation to keep his premises in safe condition for the visits of trespassers. On the other hand, when he expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit." '

"Plaintiff testified positively to the presence of snow and ice in the entrance to defendant's store. It was her claim that a thin coating of ice on the angle bar was directly responsible for her slipping and falling. If the condition described in the testimony existed at 9:45, it is a fair inference, in view of the weather conditions,

---

[5] There was, however, no discussion of or reliance upon the "natural accumulation" rule in *Torma.*

that the entrance had not been swept out or scraped out that morning. Under the rule as stated by Justice COOLEY there was at least an issue of fact as to whether defendant had exercised proper precautions to enable its customers to enter the store with reasonable assurance of safety in so doing."

*Weider v Goldsmith, supra,* the case deemed dispositive by the Court of Appeals, involved plaintiff tenant's fall on an ice and snow covered public sidewalk in front of an apartment building owned by defendant landlords. A jury verdict for plaintiff resulted, but the trial court granted defendants' motion for judgment notwithstanding the verdict. On appeal, plaintiff relied upon the theory that defendants, by their act of shoveling the sidewalk, had increased the natural hazard of the free fall of snow and ice, thereby causing injury. This Court concluded that plaintiff's proofs were insufficient to establish that injury arose from anything but a natural condition, incompleteness of snow removal being insufficient to justify a conclusion of defendants' causal intervention.

The reach of the doctrine of *Weider* was made apparent in *Gillen v Martini,* 31 Mich App 685; 188 NW2d 43 (1971). In *Gillen,* plaintiff, a business invitee antique dealer, fell, sustaining injury, on an unshoveled private walkway while approaching defendant's home in response to an advertisement in a local Lansing paper. The walkway on which plaintiff fell was unshoveled after a recent snowfall. While the Court of Appeals acknowledged that a landowner "is under an affirmative duty to exercise due care to make the premises reasonably safe for the invitee's use" that Court nonetheless stated that Michigan case law indicated that there would be no liability to an invitee where the injury-causing condition "was caused solely by

natural accumulations of ice and snow". *Gillen, supra,* 686, 687.[6]

[6] The full discussion of the *Gillen* Court was as follows:

"Plaintiff's status as a business invitee is not questioned, and there is ample evidence in the record to sustain the trial court's finding on this issue. See 2 Restatement of Torts 2d, § 332, comment e, p 179; 2 Harper & James, Law of Torts, § 27.12, p 1481. Defendants do not dispute the well-settled rule that while a landowner is not an insurer of the invitee's safety, he is under an affirmative duty to exercise due care to make the premises reasonably safe for the invitee's use. *Shorkey v Great Atlantic & Pacific Tea Co,* 259 Mich 450, 452 (1932); *Ruemenapp v National Food Stores, Inc,* 25 Mich App 291, 294 (1970); *Mills v A B Dick Co,* 26 Mich App 164, 167 (1970). Rather, defendants' argument is that the general duty owed invitees does not include removal of natural accumulations of ice and snow.

"In this regard, we note that an abutting property owner may not be held liable to pedestrians for injuries sustained by falling on sidewalks made hazardous by natural accumulations of ice and snow, and statutes and ordinances which impose a duty upon landowners to clean sidewalks create no private liability. *Taylor v Lake Shore & M S R Co,* 45 Mich 74 (1881); *Grooms v Union Guardian Trust Co,* 309 Mich 437 (1944); *Levendoski v Geisenhaver,* 375 Mich 225 (1965). Cases which alter the rule of non-liability to pedestrians do so when artificial conditions cause aggravation of natural hazards. *Betts v Carpenter,* 239 Mich 260 (1927); *Weider v Goldsmith,* 353 Mich 339 (1958).

"Once the status of invitee is established, plaintiffs have been able to establish the liability of the landowner where the injuries are sustained either in the vestibule of a building, *Keech v Clements,* 303 Mich 69 (1942), or on a sloping terrazzo walkway leading from the store to a public sidewalk, *DeSmit v J C Penney Co,* 369 Mich 527 (1963). However, we have found no Michigan case in which a landowner has been held liable for failure to clear a natural accumulation of ice and snow from a normal, outdoor, and unobstructed sidewalk. The record in this case clearly shows that the dangerous condition, if it existed, was caused solely by natural accumulations of ice and snow.

"In *Perl v Cohodas, Peterson, Paoli, Nast Co,* 295 Mich 325, 334, 335 (1940), the Court observed that:

" 'Most of the cases involving ice and snow concern actions against municipalities for such accumulations on sidewalks. However, *the standard of duty of the municipality to those who use its streets and sidewalks is the same as that of the owner or occupier of premises to an invitee.*

" '*In such cases the criterion is whether the danger was caused by natural or unnatural and artificial conditions.*' (Emphasis supplied.)

"In *Mayo v Village of Baraga,* 178 Mich 171 (1913), it was held that municipalities are not liable for failure to protect pedestrians from danger caused by the natural accumulations of ice and snow upon sidewalks. Applying that rule to the instant case, we find defendants' assignment of error well taken."

In *Bard v Weathervane of Michigan,* 51 Mich
App 329; 214 NW2d 709 (1974), plaintiff sustained
a fall in the area of the parking lot in front of
defendant's store. The parking lot was icy and
rutted from a prior accumulation of snow and
traffic and a light snow was falling at the time of
the accident. A directed verdict in favor of defend-
ants was granted in the trial court. The two-judge
majority concluded, citing *Weider v Goldsmith,
supra,* that the only duty owed plaintiff by defend-
ant was "not to increase [the] natural hazards or
create a new hazard by any affirmative act". *Su-
pra,* 331. The lower court grant of directed verdict
was affirmed on the basis that this duty had been
discharged. Judge HOLBROOK dissented. Exten-
sively analyzing the case history relied upon by
the Court of Appeals in *Gillen,* he concluded that
the "natural accumulation" rule historically arose
in the context of municipal liability for care of
public streets and sidewalks. So confined, the natu-
ral accumulation rule did not avoid the duty of a
landowner or proprietor to exercise reasonable
care—even when faced with natural accumula-
tions of ice and snow—to protect business visitors.
In support of this view, which he found embodied
in Michigan law, Judge HOLBROOK cited the deci-
sion of the Alaska Supreme Court in *Kremer v
Carr's Food Center, Inc,* 462 P2d 747 (Alas, 1969).

Controversy concerning the "natural accumula-
tion" rule again surfaced in *Gossman v Lam-
brecht,* 54 Mich App 641; 221 NW2d 424 (1974).
Plaintiff-tenant Robert Gossman brought suit
against defendant landlord for injury sustained in
a fall upon an icy sidewalk in front of the club-
house of his apartment complex. At trial, plaintiffs
abandoned the common-law theory of recovery[7]

---

[7] Presumably plaintiff anticipated running afoul of the "natural
accumulation" rule.

and asserted that defendant had a statutory duty to remove ice and snow from the sidewalk as indicated by *Feldman v Stein Building & Lumber Co,* 6 Mich App 180; 148 NW2d 544 (1967). Verdict for plaintiff resulted. The *Gossman* Court rejected the earlier holding of *Feldman* and remanded for a new trial at which the rule of *Weider, Gillen,* and *Bard* should be applied. While that Court indicated its understanding that existing Michigan law imposed no duty on a landlord, landowner or proprietor with respect to injuries caused by natural accumulations, that Court questioned the wisdom of such doctrine noting that other jurisdictions required exercise of such reasonable care as would include efforts within a reasonable time to remove natural accumulations of ice and snow.[8]

The thrust of existing Michigan case law tends to support the conclusion generally drawn that the "natural accumulation" rule applies in the context of the invitee—invitor relationship. See, in particular, *Perl v Cohodas, Peterson, Paoli, Nast Co,* 295 Mich 325; 294 NW 697 (1940). *Cf. Weider, supra;* and *Betts v Carpenter,* 239 Mich 260; 214 NW 96

---

[8] Referring to the "natural accumulation" rule as the Massachusetts rule and the rule which would require a broader duty with respect to tenants as the Connecticut rule, the Court concluded:

"[T]he legislative interest, apparent in [the Michigan Housing Law] to protect inhabitants of multiple and other dwellings from unreasonable dangers which can be remedied by ordinary care and the considerations persuading several states to espouse the Connecticut rule cause us to wonder whether Michigan·should not follow the example of Rhode Island and other states by doing so. Both Dean Prosser and 2 Harper & James, The Law of Torts, § 27.27, pp 1516–1517, endorse the Connecticut rule.

"We do not decide whether Michigan should adopt the Connecticut rule. First, we do not believe an apartment owner's general duty of reasonable care should include reasonable efforts within a reasonable time to remove natural accumulations of snow and ice unless a similar requirement is also owed by a business to its customers or other invitees. Second, we think that such a change in Michigan law, if desirable, should be made by the Legislature or by our Supreme Court, whose rulings we are bound to fathom and to follow."

(1927). The line of cases noting the natural accumulation rule, however, uniformly fails to harmonize or reconcile this rule with the rigorous duty which the law recognizes as owed an invitee. See, for a general discussion of the duty owed an invitee and distinction between such duty and the duty owed a licensee, *Preston v Sleziak,* 383 Mich 442; 175 NW2d 759 (1970), and compare *Torma, supra*—a case which recognizes this rigorous duty —and the cases cited above which discuss and rely solely upon the natural accumulation rule.

Judge HOLBROOK, in his dissenting opinion in *Bard v Weathervane,* opined that Michigan case law approved the "natural accumulation" rule with respect to *public* sidewalks but not with respect to private property in the context of the invitor—invitee relationship. Proceeding from the distinction between public and private property, Judge HOLBROOK would find a broader duty with respect to natural accumulations of ice and snow owed the business invitee than is owed the user of public streets or sidewalks. On this appeal we do not determine the duty owed the user of public streets and sidewalks. Under present Michigan law, liability for failure to keep *public* highways (including sidewalks) "in condition reasonably safe and fit for travel" falls principally upon the involved governmental unit and is statutorily defined. MCLA 691.1401, *et seq.;* MSA 3.996(101), *et seq.,* and *Levendoski v Geisenhaver,* 375 Mich 225; 134 NW2d 228 (1965). Decision of the case at hand does not require us to address the scope of the statutory duty owed the user of public streets and sidewalks respecting natural accumulations of ice and snow. We need not, therefore, pass upon the merits of the holdings in cases *(e.g., Weider, supra;* and *Betts, supra)* which deal with injury from

accumulations of ice and snow occurring on public streets and sidewalks.

As suggested by Judge HOLBROOK in *Bard, supra,* and by the *Gossman* Court, it is time that this Court critically evaluate the "natural accumulation" rule in the context of the invitor—invitee relationship. Some jurisdictions in this country adhere to the natural accumulation rule while others do not.[9] Prosser, speaking with reference to landlord-tenant law,[10] notes that "[t]he prevailing view, by a scant margin, is that the [lessor's general] duty extends to conditions of purely natural origin, such as ice and snow on the steps; and there seems to be little reason in the distinction as to such conditions made by some of the courts".[11] Prosser, Torts (3rd ed), § 63, p 420. In general agreement with Prosser, a Michigan commentator has recently indicated approval of Judge HOL-BROOK's analysis in *Bard:*

"Judge Holbrook would hold the owners and operators of business premises and the accesses thereto to a duty of due care to business invitees who might be

[9] *See, e.g.,* cases discussed in 38 ALR3d 10, § 7, pp 36 *et seq.* Compare *Crawford v Soennischsen,* 175 Neb 87; 120 NW2d 578 (1963); *Bakeman v Sears Roebuck & Co,* 16 Ill App 3d 1065; 307 NE2d 449 (1974); *Ferguson v J Bacon & Sons,* 406 SW2d 851 (Ky App, 1966); *Uhl v Abrahams,* 160 Mont 426; 503 P2d 26 (1972), and *Watts v Holmes,* 386 P2d 718 (Wyo, 1963), *inter alia,* cases approving the natural accumulation rule, and *Palmer Park Gardens, Inc, v Potter,* 162 Colo 178; 425 P2d 268 (1967); *Merkel v Safeway Stores, Inc,* 77 NJ Super 535; 187 A2d 52 (1962); *Kremer v Carr's Food Center,* 462 P2d 747 (Alas, 1969); and *Isaacson v Husson College,* 297 A2d 98 (Me, 1972), *inter alia,* recognizing a broader duty owed an invitee respecting natural accumulations of ice and snow.

[10] The same standard of care is owed by the landlord to the tenant and his invitees as is owed by the proprietor and landowner to the business invitee. *See* Prosser, Torts (3rd ed), § 63, pp 418, 419. Discussion of the duty owed a business invitee pertains with equal force to the duty owed a tenant and his invitees.

[11] In a footnote Prosser hastens to add that, "[r]easonable care may, however, permit the landlord to wait until the end of a storm."

injured as a result of natural or artificial conditions on the premises. He sees little to distinguish an owner's liability for negligence in a parking lot from liability for negligence inside buildings. The fear of unwarranted suits in this area, he maintains, can be controlled by the doctrine of contributory negligence.

"Under negligence principles, Judge Holbrook's analysis is clearly correct. The liability of an owner or occupier should not be determined solely by the condition of the premises, natural or artificial, but rather by the occupier's conduct in relation to those conditions—that is, considering all of the circumstances, was due care exercised. By establishing a duty to business invitees, the court would be merely applying traditional negligence principles. Moreover, the defense of contributory negligence constitutes a substantial impediment to any plaintiff charged with knowledge of the danger, for the plaintiff must exercise the care of a reasonable prudent person with regard to the danger." Littlejohn, Torts, 1974 Annual Survey Mich Law, 21 Wayne L Rev 665, 677, 678 (1975).

In the landmark case of *Kremer v Carr's Food Center, Inc,* 462 P2d 747 (Alas, 1969), the Alaska Supreme Court rejected application of the "natural accumulation" rule in the invitor-invitee context. In *Kremer,* plaintiff fell, sustaining injuries, upon an icy rut on an unsalted, unscraped, ice- and snow-covered parking lot maintained for use of defendant supermarket's customers. At trial, defendant argued that the natural accumulation rule barred plaintiff's recovery. Rejecting this contention, the Alaska Supreme Court stated that the case was governed by existing Alaska authority approving the definition of the duty owed by a possessor of land to an invitee as set forth in 2 Restatement Torts, 2d, § 343, pp 215–216. This section states:

"A possessor of land is subject to liability for physical

harm caused to his invitees by a condition on the land if, but only if, he

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

"(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

"(c) fails to exercise reasonable care to protect them against the danger."

The Court further added:

"Section 343 is controlling here. A jury could have found: (a) that Carr's possessed the parking lot and knew the condition of its surface, (b) that Carr's should have realized that this condition involved an unreasonable risk of harm to its business invitees, (c) that Carr's should have expected that its business invitees would not discover or realize the danger, or should have anticipated that they would fail to protect themselves against a danger they did discover or realize, or should otherwise have anticipated harm to invitees despite the fact that the danger was known or obvious to them, and (d) that Carr's failed to exercise reasonable care to protect business invitees, such as Kremer, from the dangerous surface conditions in its parking lot."

The Court confined application of the natural accumulation rule to cases involving the duty owed by municipalities to users of streets and sidewalks, viewing such users as licensees. In explaining its decision the Court further commented:

"Alaska's climatic conditions do not metamorphize all risks arising from ice and snow conditions into reasonable risks for the business invitee. Nor are we persuaded by appellee Carr's policy argument that in Alaska it would result in unreasonable costs to the private-commercial possessor of land to require the possessor to

clear ice and snow, or otherwise remedy conditions which amount to unreasonable risks of harm to its business invitees. The mere fact that snow and ice conditions prevail for many months throughout various locations in Alaska is not in and of itself sufficient rationale for the insulation of the possessor of land from liability to his business invitee. Nor do such climatic conditions negate the possibility that the possessor should have anticipated harm to the business invitee despite the latter's personal knowledge of the dangerous snow and ice conditions or the general obviousness of such conditions.

"What acts will constitute reasonable care on the part of the possessor of land will depend on the particular variables of each case. Our decision today does not represent the adoption of a flat requirement that the possessor's duty requires that he attempt to keep his land free of ice and snow. Dependent on the circumstances, reasonable care on the possessor's part could be demonstrated by other reasonable acts such as the sanding of the area, or application of salt."

In our view the Alaska Court has appropriately conceived the legal duty owed by the invitor to the invitee. As that Court found the basis for its decision rooted in pre-existing Alaska law, we find that the basis for our decision is grounded in cases such as *Torma, supra,* which have recognized the rigorous duty owed an invitee. To the extent pre-existing case law authority indicated that the natural accumulation rule applied in an invitor-invitee context, that authority is overruled.[12] For

---

[12] *See, e.g., Gillen, supra; Bard, supra;* and the statement of the law appearing in *Perl, supra.*

In *Perl,* this Court stated that "The standard of duty of the municipality to those who use its streets and sidewalks is the same as that of the owner or occupier of the premises to an invitee." This statement did not and could not anticipate our holding today. Courts in other jurisdictions which accept the basis of our holding in this case have conceived the nature of the duty owed by governmental units respecting ice and snow accumulations on streets and sidewalks variously. Contrast, *e.g., Kremer, supra,* and *Stippich v Milwaukee,* 34

reasons adequately stated by the Alaska Court, we reject the prominently cited notion that ice and snow hazards are obvious to all and therefore may not give rise to liability. While the invitor is not an absolute insurer of the safety of the invitee, the invitor has a duty to exercise reasonable care to diminish the hazards of ice and snow accumulation. The general description of the duty owed appearing in the Restatement is a helpful exposition of the duty described in *Torma*. As such duty pertains to ice and snow accumulations, it will require that reasonable measures be taken within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee. The conduct of the invitee will often be relevant in the context of contributory negligence.

Applying the foregoing to the case at hand, we sustain the jury verdict against defendant A & P. Conflicting instructions, indicating both the rigorous duty owed plaintiff as an invitee and the natural accumulation rule, were submitted to the jury. The jury, in returning a verdict for plaintiff, must have perceived that the duty owed plaintiff as an invitee was not circumvented by the natural accumulation rule. Evidence at trial indicated that at the time of the accident the parking lot was ice- and snow-covered and very slippery. Snow had not fallen for several days and there was no evidentiary indication that salt had been applied to the parking lot surface. Measuring the appropriate duty against the evidence, the jury could have permissibly determined that A & P's failure to exercise reasonable care caused plaintiff's injuries.

## II—INDEMNITY

Prior to trial, defendant A & P cross-claimed

Wis 2d 260; 149 NW2d 618 (1967). As we have indicated, definition of the nature of this duty is beyond the scope of our decision today.

against defendants Jahn on the theory that the lease between the parties indicated that responsibility for injury to plaintiffs as the result of ice and snow conditions on the shopping center parking lot rested with the Jahns. On this basis it was asserted that the Jahns were responsible for indemnifying A & P in the event a judgment was obtained by plaintiffs against A & P.

The description of the leased premises in the lease between the Jahns ("Lessors") and A & P ("Lessee") reads as follows:

" * * * the Lessor has agreed to let and hereby does let and demise to the Lessee, and the Lessee has agreed to take and hereby does take from the Lessor, for the purpose of a general merchandise business, the first floor in a store building to be erected and constructed by the Lessor and a parking lot to be built adjacent thereto, upon the following described property owned by the Lessor, situated in the City of Livonia, County of Wayne, State of Michigan,

(a) An Early American building 100 feet by 150 feet to be erected and a completely improved parking lot to be installed on a parcel of land described as follows:

"A parcel of land located in the N.E. 1/4 of Section 21, T. 1 S., R. 9 E., City of Livonia, Wayne County, Michigan being more particularly described as follows:

"Beginning at a point distant due west 135.00 feet along the north line of said Section 21, and S 0°−31′−30″ E 60.00 feet, from the N. E. corner of a said Section 21, and proceeding thence S 0°−31′−30″ E 186.50 feet, thence due west 202.42 feet, thence S 0°−31′−30″ E 232.00 feet, thence due west 224.00 feet, thence N 0°−31′−30″ W 418.50 feet to a point on the south line of Five Mile Road thence due east along the south line of Five Mile Road 426.42 feet to the point of beginning.

"(b) Provide a hard-surfaced parking lot, as referred to in Lessee's specifications, consisting of parking areas, driveways, approaches and sidewalks (public and pri-

vate) containing approximately 104,345 square feet on portions of land as incorporated in this lease and outlined in red on attached Exhibit 'A'.

with the appurtenances; which store building, first floor store, and parking lot shall conform to the plans and specifications properly initialed and approved by the Lessee and made a part hereof, and shall be known by Street * * * Five Mile Road, Livonia, Michigan."

Other pertinent provisions of the lease indicate:

"The Lessee will keep the interior parts of the building on the demised premises in as good repair as same are in when possession hereunder is given to Lessee, except, without limitation, for repairs occasioned by fire, termites, the elements, other casualty or happening, unsafe condition or settling of the building, reasonable wear and tear, structural repairs, repairs to and of the heating equipment and parts thereof, underground plumbing, water or sewerage system, *parking lot,* and repairs of an extraordinary character. * * * Excepting for such repairs as Lessee has agreed to make herein, Lessor shall make all replacements and any and all other repairs to the demised premises and comply with all such rules, regulations and requirements; and the Lessor assumes liability for all damage and/or injuries resulting from his breach of this covenant and shall indemnify and save harmless the Lessee against any and all claims, demands, actions, causes of action, loss or expense brought about by personal injury or property damage to the Lessee, Lessee's customers, or others, or for any damage to the Lessee's merchandise or equipment, arising out of Lessor's failure to make such repairs or replacements, provided, however, that Lessor's liability shall not attach until after the expiration of a reasonable period within which to correct such condition, following written notice to Lessor. [Emphasis supplied.]

* * *

"Lessor and Lessee further agree that the parking facilities shall be provided solely for the use of Lessee's customers and its invitees *in common* with Lessor's

other tenant's customers and invitees, therefore adequate parking limit postings shall be made, limiting said parking to two (2) hours. Landlord agrees to issue regulations, prohibiting parking in parking area by employees of tenants of shopping center. [Emphasis supplied.]

*   *   *

"It is further understood and agreed that Lessee shall share in all of the following expenses resulting from the need for adequate parking lot upkeep:

"(1) Lighting (including shopping center sign)

"(2) Snow removal

"(3) Striping and cleaning

"Lessee's proportionate share of such expenses shall be based upon amount of building front feet occupied in relation to total front feet of stores erected except, Lessee's portion of such expense shall be limited to Six ($6.00) Dollars per front foot per year of building occupied. Lessor shall provide Lessee a copy of all bills paid in this regard, together with invoice outlining Lessee's proportionate cost."

A subsequently executed amendment to the lease which changed the description of the demised premises, reads in pertinent part:

"Since the parking area included in the demised premises is going to be utilized by others than the Lessee and its customers, agents and invitees, and since Lessee's customers, agents and invitees will be using parking areas not included in the demised premises, all in the spirit of the Shopping Center appearance which the Lessors and the Wilkies are attempting to create by the attached agreement, Lessors agree that the Lessee is vitally concerned with the maintenance of those parking areas and access drives, which will be located on property belonging to the Wilkies, as set forth in the attached agreement, therefore, it is agreed that as between the parties hereto, *it is the LESSORS' obligation to see that those Shopping Center parking areas and access drives, which will be located on property*

*belonging to the Wilkies, are maintained in the same
manner as Lessors are required to maintain the park-
ing areas under the terms of the lease between the
parties hereto.* If Lessors fail in this obligation, Lessee
shall have the same recourse as it would have in the
event of any other default by Lessors in the terms and
conditions of said Lease." [Emphasis supplied.]

After A & P's cross-claim was filed, the Jahns
moved for summary judgment asserting that the
lease contained "no provision as to indemnifica-
tion" and, that in lieu thereof, it was the duty of A
& P as lessee "to provide for the safety of its
invitees on leased premises". The Jahns further
informed the court that "there are no facts upon
which reasonable minds could differ". A & P an-
swered the Jahns' motion and moved for summary
judgment on its own behalf on the basis of the
above-cited lease provisions. A hearing on the
motions for summary judgment was held before
the trial court on January 28, 1972. At this hear-
ing the trial court denied the Jahns' motion but
granted summary judgment in favor of A & P. An
order to such effect was subsequently entered.

No transcript of the hearing at which summary
judgment was granted is available upon review.
The parties apparently did not insist that the
proceedings be transcribed.[13] In view of these cir-
cumstances we will proceed to review the trial
court's actions on the premise that summary judg-
ment was granted on the basis of the lease provi-
sions relied upon by A & P.

In *Siegel v Detroit City Ice & Fuel Co,* 324 Mich
205; 36 NW2d 719 (1949), plaintiff, an invitee to
defendant theatre's premises, fell, while walking
at night, in a snow- and ice-covered hole on a

---

[13] The Supreme Court Clerk's office has obtained confirmation that
the proceedings held on January 28, 1972, were not transcribed.

common passageway owned by defendant ice company and leased to defendant theatre. The passageway led to defendant ice company's premises and also to the premises which defendant theatre leased from the ice company. The jury found both defendants negligent, awarding damages. On appeal, defendant ice company sought to avoid liability to plaintiff claiming, pursuant to the lease with defendant theatre, that it was not responsible for the condition of the lot that had been rented to the theatre company. In meeting this contention the Court observed:

"[This] is not a case where the landlord has rented the entire premises to one person who goes into sole possession, but it is one where the landlord reserves several buildings on the property and the joint right of ingress and egress with the tenant."

The Court then went on to conclude that since both defendants had control and possession of the property the jury award against both was proper, citing as "a correct statement of the law" the following:

"One who leases a part of the premises, retaining control of other portions such as common walks or passages which the tenant is entitled to use, is subject to liability to persons lawfully on the land with the consent of the tenant for damages caused by a dangerous condition existing on the part under the owner's control, if by reasonable care he could have discovered the condition and made it safe. *Bellon v Silver Gate Theatres, Inc,* 4 Cal (2d) 1, 14 (47 Pac [2d] 462 [1935]); *Spore v Washington,* 96 Cal App 345 (274 Pac 407 [1929]); see *Brown v Pepperdine,* 53 Cal App 334, 336 (200 Pac 36 [1921]); 2 Restatement, Torts, § 360; Prosser on Torts (1941), pp 656, 657; 32 Am Jur p 561; 15 Cal Jur p 741. Accordingly, invitees of the tenant are regarded as being invitees of the owner while on pas-

sageways which invitees of the tenant have a right to use and which are under the owner's control. *(Spore v Washington,* 96 Cal App 345, at page 350 [274 Pac 407]); see 15 Cal Jur p 741." *Supra,* 214, 215.

In *Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399; 97 NW2d 90 (1959), the Court distinguished *Siegel* on its facts, but nonetheless approved the proposition that "control and possession" of the premises is critical in determining whether landlord, tenant, or both will be liable for injuries sustained on the premises.

The legal effect of the doctrine of *Siegel* and *Bluemer* was accurately reported as follows by the Court of Appeals in *Whinnen v 231 Corp,* 49 Mich App 371; 212 NW2d 297 (1973):

"The consensus holding seems to be that where a landlord or a tenant has, by virtue of a lease, assumed that degree of obligation with respect to the demised property as to indicate that control rests in him he will be held to answer for any breach of the duty to maintain the premises in a reasonably safe condition. *Bluemer v Saginaw Central Oil & Gas Service, Inc,* 356 Mich 399; 97 NW2d 90 (1959) and *Siegel v Detroit City Ice & Fuel Co,* 324 Mich 205; 36 NW2d 719 (1949)." *Supra,* 375.[14]

While *Siegel* and *Bluemer* are of significance to resolution of this case, the governing principle of law is more aptly framed as follows:

"Where a person has become liable with another for harm caused to a third person because of his negligent failure to make safe a dangerous condition of land or chattels * * * which, as between the two, it was the other's duty to make safe, he is entitled to restitution

[14] An annotation discussing the liability of a shopping center lessee for injury to a patron from a condition on a portion of the premises not included in his leasehold appears at 48 ALR3d 1163.

from [*i.e.,* to be indemnified by] the other for expenditures properly made in the discharge of such liability, unless after discovery of the danger, he acquiesced in the continuation of the condition." Restatement, Restitution, § 95, p 415.

This rule is noted, and the following comments are made with respect to its application, in 41 Am Jur 2d, Indemnity, § 17, p 704:

"In accord with this rule are cases holding that where the loss results from the indemnitee's negligent failure to make safe a dangerous condition created by the indemnitor, and does not result from the indemnitee's own sole negligence, indemnity is not barred. But where the indemnitee's acquiescence in the dangerous condition is shown by long-continued awareness of a dangerous situation on his part without the taking of any corrective measures or calling upon the indemnitor to do so, indemnity will not be permitted."[15]

The principle set forth in the Restatement applies to the facts at hand although the jury in this case found no cause of action against defendants Jahn. During presentation of proofs at trial, the trial court did not permit introduction of evidence pertaining to the issue of risk allocation between the Jahns and A & P. In particular, the introduction of lease provisions which pertained to risk allocation was prohibited. The reason for such treatment was that the issue of risk allocation between A & P and the Jahns had already been resolved by the grant of A & P's motion for summary judgment of indemnification after both parties had conceded that there were no disputed facts pertaining to the issue. The language of the

[15] *See, e.g.,* the application of these principles in *Indemnity Insurance Co of North America v Otis Elevator Co,* 315 Mich 393; 24 NW2d 104 (1946).

Restatement contemplates circumstances where the indemnification issue is resolved after liability against defendants has been determined. Prior resolution of the indemnity issue in this case determined at the outset the potential derivative liability of defendants Jahn.

There is a clear relationship between the "control and possession" principle of *Siegel, Bluemer,* and *Whinnen* and the Restatement "duty to make safe". The land or property owner's bundle of possessory responsibilities may be diminished by the "loaning" of one or several of these responsibilities. This "loaning" gives a quantum of "control and possession" to another party. If such quantum of control and possession confers responsibility for an aspect of ownership which gives rise to liability then a "duty to make safe" will be found to exist.

Motions for summary judgment were submitted to the trial court in agreement that the sole basis for consideration was the application and effect of the lease terms.[16] Defendants Jahn contended then, and now assert, that there was no express contract of indemnification in the lease. While this is undoubtedly so, a right to indemnification may be said to arise if the lease provisions establish that the Jahns by the provisions of the lease assumed a "duty to make safe" the area of the parking lot against hazards from ice and snow accumulation. The description of the demised premises in the lease tends to indicate that the parking lot was leased to A & P. However, other lease provisions

---

[16] On this basis the instant case may be distinguished from, *e.g., Whinnen, supra,* and *Indemnity Insurance Co,* fn 14 *supra,* which acknowledge that the contract or lease may not be the only evidentiary fact considered in determining whether a right to indemnification exists. Note, in this regard, the qualifications in the Restatement rule stated above.

explicitly stipulate that the Jahns were to assume responsibility for providing ice and snow removal on the parking lot, although charging the A & P and others for such service, and that the Jahns were to assume responsibility to make necessary repairs and maintain the parking lot and to delimit parking use by customers on the parking lot.

Even if we assume that the right to possess the parking lot passed to A & P under the terms of the lease, we conclude that A & P, under the lease, "loaned" its responsibility for removal of ice and snow hazard in the parking lot to the Jahns.[17] Such "loaning" placed the requisite control and possession in the Jahns to give rise to a duty on their part to make safe the area of the parking lot against hazards from ice and snow accumulation. Injury to plaintiff occurred as a result of the failure of defendants Jahn to fulfill this duty. Summary judgment of indemnification pursuant to the lease terms was properly granted in favor of A & P.

The Court of Appeals is reversed and the judgments entered in the court below are reinstated. Costs to plaintiffs and cross-plaintiff.

T. G. KAVANAGH, C. J., and WILLIAMS, LEVIN, COLEMAN, and LINDEMER, JJ., concurred with FITZGERALD, J.

---

[17] In making this "assumption" we acknowledge that the lease defines the right to possession of the parking lot with anything but precision. Our assumption resolves the pristine question of possessory right in favor of defendants Jahn.