CAVANAGH, J.
0dissenting). I agree with the majority’s conclusions under MCL 554.139(1) (a) that a parking lot is a common area, the intended use of a parking lot includes walking to and from parked vehicles, accumulations of ice and snow may be subject to a landlord’s duties under § 139(l)(a), and the “open and obvious danger” doctrine is inapplicable to the duty created by the statute.[1] However, I disagree with the majority’s application of § 139(l)(a) in this case. While I tend to agree with the majority that one or two inches of snow would rarely make a parking lot unfit for its intended use under § 139(l)(a), I cannot categorically conclude that an accumulation of one or two inches of snow or ice can never make a parking lot unfit. Specifically, I cannot conclude that the parking lot in this case was fit for its use on the facts presented. Thus, I respectfully dissent.
I believe that plaintiff has made a sufficient showing to survive summary disposition under § 139(1)(a). Section 139(1) provides that, in every lease or license of residential premises, a landlord has a duty to ensure that premises and common areas are fit for use, to keep the premises in reasonable repair, and to comply with health and safety laws. Review of a claim under § 139(1) requires a determination of where the claimed injury took place. If the injury occurred in a common area, *444 § 139(l)(a) requires review of the parties’ intended use for the common area and the area’s fitness for that use.
In this case, plaintiff was defendant’s tenant and suffered injury in defendant’s apartment complex parking lot. The parking lot was a common area. Its intended use included parking vehicles, which includes walking to and from the vehicle. Plaintiff was walking to his vehicle when he slipped and fell; therefore, he was using the parking lot as the parties intended when he was injured.[2] So the next question is whether the parking lot was fit for its intended use when plaintiff fell.
The concept of fitness for use includes safety. The Second Restatement of Torts states:
[A]n invitee enters upon an implied representation or assurance that the land has been prepared and made ready and safe for his reception. He is therefore entitled to expect that the possessor will exercise reasonable care to make the land safe for his entry, or for his use for the purposes of the invitation. [2 Restatement Torts, 2d, § 343, comment b, p 216.]
Specifically in landlord and tenant law, this Court has stated that “a landlord may be held liable for an unreasonable risk of harm caused by a dangerous condition in the areas of common use retained in his control. ...” Williams v Cunningham Drug Stores, Inc, 429 Mich 495, 499; 418 NW2d 381 (1988). The Williams Court reasoned:
*445 The rationale behind imposing a duty to protect in these special relationships is based on control. In each situation one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself. The duty to protect is imposed upon the person in control because he is best able to provide a place of safety.” [Id. (emphasis added).]
So § 139(1)(a), requiring fitness, imposes a duty on the landlord to ensure that common areas are safe for their intended use. Whether a common area is sufficiently safe to be fit for its intended purpose depends on the condition of the area in question.[3]
There appears to be some confusion about the condition of defendant’s parking lot at the time of plaintiffs injury. The Court of Appeals described the condition as “[a] parking lot covered with ice,”[4] while the majority describes the condition as a lot with “one to two inches of accumulated snow .. .. ” Ante at 423. A two-inch sheet of ice ordinarily presents a very different degree of danger from that ordinarily presented by two inches of snow. Typically, the danger associated with snow becomes greater as the snow becomes deeper. But ice may be dangerous at almost any thickness.
Plaintiff testified that when he left his apartment for work on the morning of March 13, 2003, the entire area *446 was covered with “maybe an inch or two” of snow that had accumulated overnight. He stepped down the two stairs of his porch, walked down the sidewalk to the parking lot, and then began walking across the parking lot toward his car. After walking about 20 feet across the parking lot toward his car, plaintiff slipped and fell. In deposition testimony, plaintiff described how he fell: “I just take the step and then my foot falls or slips out from under me, and then I fell and then I — that’s basically it. My foot slipped. It was the ice that I slipped on.” When asked how he knew that he slipped on “ice versus snow,” plaintiff stated: “Well, because the way my foot slipped. It slipped and my leg just went from under me and then when I fell, I saw where my foot slipped, I saw ice.” So, according to the only evidence available to this Court, plaintiff slipped on ice in defendant’s parking lot. I believe that a parking lot covered with ice is not fit for its intended use because it is not safe for walking.
The majority states that “[mjere inconvenience” does not make a common area unfit for its intended use. Ante at 430. But the ice-covered surface of defendant’s parking lot presented a much greater danger to plaintiff than mere inconvenience. Plaintiffs fall on ice in defendant’s parking lot caused severe injury. Plaintiffs fractured ankle required extensive surgery. Plaintiff was not able to return to work for three months following surgery. In deposition testimony two years after the injury, plaintiff stated, “I always have pain and restrictions... I have pain in my ankle every day.” Further, plaintiff is subject to ankle “re-sprains” three or four times a week. I would not call the condition plaintiff faced a mere inconvenience. And I would not call a common area that presented such a danger fit for its intended use.
*447 The majority states that the parking lot was fit for its intended use because “tenants were able to enter and exit the parking lot, to park their vehicles therein, and to access those vehicles.” Ante at 430.1 am unaware of any evidence to support this conclusion. The only fact established on this point is that plaintiff was not able to access his vehicle without injury. The majority concludes that the parking lot was fit for its intended use when plaintiff fell because “plaintiff did not show that the condition of the parking lot in this case precluded access to his vehicle.” Ante at 430. But, as mentioned, access to vehicles must be safe in order to be fit. Plaintiff could access his vehicle only by risking serious injury.
A landlord’s duty to provide safe common areas does not preclude a tenant’s duty to take steps within his control to keep himself safe. The trial court intimated as much when it opined on the proper method of walking on ice: “I suggest that — I call it the Michigan shuffle, but you don’t necessarily walk; you do the skating.” Contrary to the apparent perception of the trial court, plaintiff testified in deposition that he took every reasonable precaution: he was wearing boots specifically made for walking on snow, he watched where he was going, and he proceeded with great care. when crossing the parking lot. Despite his best efforts to attend to his safety by means within his control, he was injured. At this pretrial stage, I believe that plaintiff has raised a genuine issue of fact concerning whether the parking lot was unfit. Thus, summary disposition is inappropriate.
If a plaintiff is able to show that a common area is not fit for its intended use, the reasonableness of the landlord’s actions to remedy the unfit condition should also be assessed. “[A] contract to keep the premises in *448 safe condition subjects the lessor to liability only if he does not exercise reasonable care after he has had notice of the need of repairs. In any case his obligation is only one of reasonable care.” 2 Restatement Torts, 2d, § 357, comment d, pp 242-243. In this case, if the parking lot is found unfit, there is a valid question whether defendant exercised reasonable care to remedy the unfit condition. I would remand the case to the trial court for further inquiry into these matters under the proper legal standards.
I would also state a clearer standard for a landlord’s liability regarding ice and snow than the majority provides to guide courts facing similar claims in the future. Because fitness for use requires a landlord to take measures to provide safe common areas, and because a landlord’s duty requires exercise of reasonable care, I would apply the standard of Quinlivan v Great Atlantic & Pacific Tea Co, Inc, 395 Mich 244, 261; 235 NW2d 732 (1975): the duty owed by a landlord to a tenant regarding ice and snow requires that “reasonable measures be taken within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the [tenant].” This standard arose in tort law, but it applies to fitness for use as well. It is faithful to the statute and readily applicable for courts in the future.
I generally agree with the majority’s analysis (if not its application) of § 139(l)(a), but I believe the majority has unnecessarily reached several issues. These matters are not necessary to the majority’s disposition of the case; thus, they are dicta. Nonetheless, I disagree with several of these extraneous conclusions. First, because the majority holds that defendant is entitled to summary disposition, there is no need to determine plaintiffs potential remedy. However, I would hold that a *449 plaintiff who proves a claim under MCL 554.139(1) is entitled to full damages for the injury. The Second Restatement of Torts, § 357, states:
A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if
(a) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and
(b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor’s agreement would have prevented, and
(c) the lessor fails to exercise reasonable care to perform his contract. [Id. at 241.]
The comments to that section state that “the duty arises out of the existence of the contract to repair.” Id., comment d, p 242. The comments further state that “[t]he lessor’s duty under the rule stated in this Section is not merely contractual, although it is founded upon a contract. It is a tort duty.” Id., § 357, comment c, p 242. There is no reason this liability should not apply under MCL 554.139(1). Indeed, it should apply because the statute’s very purpose is to provide safety in areas outside the tenant’s control. Williams, supra at 499 (“duty to protect is imposed upon the person in control because he is best able to provide a place of safety”).
Also, because this case involves a tenant only, there is no reason to address a landlord’s liability to nontenants under § 139(1). However, I believe the majority incorrectly asserts that a nontenant could never recover under the covenant for fitness because a lessor has no contractual relationship with a nontenant. The Second Restatement of Torts, § 357, states that “[a] lessor of land is subject to liability for physical harm caused to *450 his lessee and others upon the land with consent of the lessee . ...” Id. at 241 (emphasis added). Additionally, I believe the intended use of a parking lot in an apartment complex will generally include, at minimum, parking (and walking) for a tenant’s guests. An apartment is a tenant’s home. It is likely that both parties to an apartment lease intend the parking lot to be used by guests as well as tenants.
Finally, I believe that MCL 554.139(1) (b) may apply to common areas. Section 139(1) (b) contains two independent covenants. The first is “[t]o keep the premises in reasonable repair during the term of the lease.” The second is “to comply with the applicable health and safety laws of the state and of the local government.” The second is independent of the first and is not confined to the “premises.” Therefore, a landlord may be liable for an injury sustained in a common area due to a condition that does not comply with health and safety laws. I would direct the trial court to examine whether plaintiff has a claim under the second covenant of § 139(l)(b).
The trial court in this case found that § 139(1) did not apply and the open and obvious danger doctrine did apply. The majority determines that § 139(1) applies and the open and obvious danger doctrine does not. I agree with that determination, but I would affirm the result of the Court of Appeals and remand this case to the trial court for further proceedings under the proper legal standards.
Kelly, J., concurred with Cavanagh, J.

 I also agree that placement in a footnote does not, of itself, affect the language’s precedential significance.

 The majority states that “[a] tenant using a common area for a purpose other than that for which the area is intended is not protected by the covenant for fitness ....” Ante at 431. I disagree. The statute does not require that the injury occur while the common area is being used as intended. It requires the common area to be fit for the use intended. Thus, if the area is unfit for its intended use, an injured plaintiff may seek recovery for damages regardless of the use that plaintiff was making of the area when the injury occurred.

 The trial court did not inquire into the condition of the common area because it applied improper legal standards. The trial court believed that MCL 554.139(1) did not apply to this case and the open and obvious danger doctrine did apply. Thus, the trial court only needed to know two facts: that plaintiff fell on ice or snow and the ice or snow was open and obvious. Plaintiff attempted to present more facts regarding the condition of the common area at the hearing on defendant’s motion for summary disposition, but the trial court rebuffed the effort. Inquiry into the condition of the common area was irrelevant to the legal standards applied by the trial court.

 Allison v AEW Capital Mgt, LLP (On Reconsideration), 274 Mich App 663, 671; 736 NW2d 307 (2007).