CAVANAGH, J.
(concurring in part and dissenting in part). I agree with the majority that the exclusivity provision of the dramshop act, MCL 436.1801(10), does not preclude plaintiffs premises liability claim. I also agree that, under the unique facts of this case, consideration of plaintiffs intoxication with regard to defendant’s duty of care in a premises liability action may circumvent the spirit of the dramshop act. I must, however, concur in the result only.
Unlike the majority, I believe that M Civ JI 19.03 and 19.05 remain accurate instructions under Michigan law. Moreover, I am troubled by the majority using this case as a vehicle to rewrite Michigan premises liability law and to unwisely extend the rationale of Lugo v Ameritech Corp, Inc, 464 Mich 512; 629 NW2d 384 (2001). Until today, the precise application and scope of the majority’s “special aspects” analysis was unclear. See, e.g., Brousseau v Daykin Electric Corp, 468 Mich 865 *336 (2003) (MARKMAN, J., dissenting). Unfortunately, the majority opinion today ends that debate.
Today’s decision is simply the latest installment in the majority’s systematic dismantling of the Restatement of Torts approach. The majority effectively states that the Restatement approach is dead because Lugo, and only Lugo, is the law in Michigan. In revising M Civ JI 19.03, the majority signals the death knell to the protections previously afforded the citizens of this state and, as a practical matter, overrules decades of well-reasoned precedent.
I remain committed to the view that the majority’s singular approach is wrong and inconsistent with Michigan’s premises liability jurisprudence.[1] Because Lugo, and its “special aspects” analysis, is not the only relevant inquiry in such cases, I fail to see the wisdom of revising M Civ JI 19.03 and 19.05 to only reflect the current majority’s Lugo standard. I remain committed to the view that under Michigan law, other inquiries are relevant, if not required, in open and obvious danger cases.
I. M CIV JI 19.03
I agree with the majority that a premises possessor is generally not required to protect an invitee from open and obvious dangers. This is the approach advanced by 2 Restatement Torts, 2d, § 343A, an approach which “has been key to Michigan’s open and obvious danger law. .. .” Lugo, supra at 528 (CAVANAGH, J., concurring); see also Bertrand v Alan Ford, Inc, 449 Mich 606, *337 609; 537 NW2d 185 (1995); Perkoviq v Delcor HomesLake Shore Pointe, Ltd, 466 Mich 11, 16; 643 NW2d 212 (2002). As noted by the Restatement, however, there are exceptions to this general rule, and these exceptions cannot be conveniently summarized by a “special aspects” analysis.
The applicable Restatement sections provide:
§ 343. Dangerous conditions known to or discoverable by possessor.
A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
(c) fails to exercise reasonable care to protect them against the danger. [2 Restatement Torts, 2d, § 343, pp 215-216 (emphasis added).]
§ 343A. Known or obvious dangers.
(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.
(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated. [Id. at § 343A, p 218 (emphasis added).]
Comment f to § 343A is particularly enlightening and states in relevant part:
There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will *338 cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.
Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee’s attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. [Id. 2d, § 343A comment 1(f), p 220 (emphasis added).]
It is within this context that the proposed revisions to M Civ JI 19.03 must be examined. The instruction provides in pertinent part:
A possessor of [land/premises/a place of business] has a duty to maintain the [land/premises/place of business] in a reasonably safe condition.
A possessor has a duty to exercise ordinary care to protect an invitee from unreasonable risks of injury that were known to the possessor or that should have been known in the exercise of ordinary care.
*(A possessor must warn the invitee of dangers that are known or that should have been known to the possessor unless those dangers are open and obvious. However, a possessor must warn an invitee of an open and obvious danger if the possessor should expect that an invitee will not discover the danger or will not protect [himself/herself] against it.) [Emphasis added.]
On the bases of the Restatement and Michigan law, I believe M Civ JI 19.03 to be an accurate instruction.
For example, in Riddle v McLouth Steel Products Corp, 440 Mich 85; 485 NW2d 676 (1992), this Court made it clear that the open and obvious doctrine is not *339 an absolute bar to liability. In Riddle, this Court noted that “where the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee.” Riddle, supra at 96 (emphasis added). As the Minnesota Supreme Court has noted, § 343A’s “unless” clause is a “crucial qualifier to the general rule” of the Restatement. Sutherland v Barton, 570 NW2d 1, 7 (Minn, 1997).[2] Thus, “[i]f the conditions are known or obvious to the invitee, the premises owner may nonetheless be required to exercise reasonable care to protect the invitee from the danger.” Riddle, supra at 97.
It becomes obvious that the “special aspects” of a particular condition may be a critical question in determining whether liability should be imposed upon a possessor in open and obvious danger cases. The majority concludes that under its “special aspects” analysis, “the fact-finder must consider the ‘condition of the premises,’ not the condition of the plaintiff.” Ante at 329. Although this may be a relevant inquiry, the condition’s “special aspects” are by no means disposi-tive. Additionally, solely focusing on a condition’s “special aspects” reads the “unless” clause out of Michigan premises liability law.
*340 Rather, the “special aspects” endeavor must be made within the framework set forth by the Restatement as adopted by this Court. Thus, under Michigan practice, other inquiries are required in making a liability determination and a court’s analysis simply does not end with the condition’s “special aspects.” Stated differently, “The liability of an owner or occupier should not be determined solely by the condition of the premises, natural or artificial, but rather by the occupier’s conduct in relation to those conditions—that is, considering all of the circumstances, was due care exercised.” Littlejohn, Torts [1974 Annual survey of Michigan law], 21 Wayne L R 665, 677-678 (1975). M Civ JI 19.03 recognizes this point of law and, therefore, remains an accurate instruction.
Consider the following hypothetical example, an elaboration of the facts presented in Sidorowicz v Chicken Shack, Inc, 469 Mich 919; 673 NW2d 106 (2003). During remodeling, a particular restaurant has a six-foot hole in its floor. The restaurant owner decides it would be beneficial to remain open during remodeling. The owner conspicuously places large signs at the entrance and throughout the restaurant indicating the presence of the hole. The owner further places a giant red flag in the center of the hole. Patrons can easily avoid the hole by traveling down one of two alternate aisles. A blind person enters the restaurant to grab a bite to eat. The owner knows that the invitee is blind. The invitee is wearing sunglasses, carries a white cane, has a sign around his neck that reads, “I am blind,” and even orally states to the owner, “I am blind and cannot see.”
The hole is properly considered a dangerous condition on the land. Further, the condition would arguably be considered open and obvious to a reasonably prudent *341 person.[3] Additionally, no “special aspects” exist in this situation because the “average” person could easily avoid the dangerous condition by taking an alternative route. Under the majority’s approach, the analysis ends at this point and the restaurant owner can never be held liable for failing to warn the blind invitee or for failing to take other actions to protect this person. This is true even though the owner knows with near absolute certainty that the invitee will be unable to protect himself and will suffer physical injury. The prior decisions from this Court, M Civ JI 19.03, the Restatement, and common sense suggest that the owner may be held liable in this instance despite the “obviousness” of the dangerous condition. This point of law appears to have eluded the majority and I would necessarily have to hold myself liable if I did not warn its members of their obvious error.
In its assessment of the above hypothetical example, the majority states, “By imposing an obligation upon a homeowner or other premises possessor, not merely to make his or her premises reasonably safe under ordinary circumstances, but also under every conceivable circumstance, Justice CAVANAGH in his concurrence/dissent,... would impose a substantially increased legal burden upon such persons.” Ante at 329 n 10 (emphasis added). I am troubled by this assertion because, unlike the majority, I do not believe that a blind person entering a *342 restaurant is an extraordinary or uncommon event. Moreover, I question the wisdom of any rule of law that only applies under so-called “ordinary” or idyllic circumstances. The Restatement approach seeks to protect those who cannot protect themselves, including the more than forty-three million Americans with disabilities. Apparently, the majority’s oversimplified Lugo approach takes a different view.
In sum, I am troubled by the majority’s overreliance on Lugo’s “special aspects” analysis. By focusing solely on this analysis, the majority repudiates the Restatement approach and, at the very least, unwisely eliminates the “unless” clause from Michigan jurisprudence.
II. MCIVJI 19.05
I share in the concerns expressed by Justice WEAVER and likewise disagree with the majority’s decision to revise M Civ JI 19.05 to solely reflect its Lugo standard. In Quinlivan v The Great Atlantic & Pacific Tea Co, Inc, 395 Mich 244, 261; 235 NW2d 732 (1975), this Court stated, “While the invitor is not an absolute insurer of the safety of the invitee, the invitor has a duty to exercise reasonable care to diminish the hazards of ice and snow accumulation.” Such a duty requires “that reasonable measures be taken within a reasonable time after an accumulation____” Id. M Civ JI 19.05 accurately reflects the rule announced in Quinlivan and followed in this state for nearly thirty years.[4]
*343 In qualifying M Civ JI 19.05 with its Lugo standard, the majority has added uncertainty to Michigan premises liability law. In response to the dissent, the majority claims that Quinlivan “must be understood in light of this Court’s subsequent decisions in Bertrand and Lugo" Ante at 333 n 13. However, neither Bertrand nor Lugo involved the accumulation of ice and snow. Further, today’s opinion, taken to its logical conclusion, could be read to imply that any accumulations of ice and snow are necessarily open and obvious dangers. Yet, in Quinlivan this Court specifically rejected “the prominently cited notion that ice and snow hazards are obvious to all and therefore may not give rise to liability.” Quinlivan, supra at 261. Thus, the majority creates unnecessary tension with Quinlivan where none had existed before.
Additionally, even if the majority opinion is read narrowly, i.e., that the Lugo qualification only applies where it is first determined that the accumulation is open and obvious, today’s approach significantly alters the duty traditionally imposed upon possessors of land. Nothing in Quinlivan suggests that an invitor must diminish the hazards of ice and snow only if the accumulation involves “special aspects” or is “unreasonably dangerous.” I share in the concerns set forth by Justice WEAVER regarding this line of reasoning. Because M Civ JI 19.05 accurately reflects Quinlivan and Quinlivan remains the law, I must respectfully disagree with the majority’s decision to revise this instruction in light of Lugo.
KELLY, J., concurred with CAVANAGH, J.

 I appreciate the majority graciously granting me permission to espouse my view of the law and allowing me to “reargue” the ramifications of overreliance on Lugo’s errant approach. See ante at 329 n 9.

 See also 1 Dobbs, Torts (2001), § 235, p 604 (The Restatement view “has commanded almost complete acceptance where it has been expressly considered.”); Prosser & Keeton, Torts (5th ed, 1984), § 61, p 427 (“In any case where the occupier as a reasonable person should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required.”).

 The Restatement defines a dangerous condition as “obvious” where “both the condition and the risk are apparent to and would he recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.” 2 Restatement Torts, 2d, § 343A comment 1(b), p 219. Further, “[t]he word ‘known’ denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves. Thus the condition or activity must not only he known to exist, hut it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must he appreciated.” Id.

 M Civ JI 19.05 provides: “It was the duty of [Defendant] to take reasonable measures within a reasonable period of time after an accumulation of snow and ice to diminish the hazard of injury to [Plaintiff].”