ALTAIRI v ALHAJ

Docket No. 203221. Submitted January 6, 1999, at Detroit. Decided May 28, 1999, at 9:05 A.M. Leave to appeal sought.

Abdul Altairi brought an action in the Wayne Circuit Court against Ahdulilah Ali Alhaj, seeking damages for injuries sustained when the plaintiff slipped and fell on ice covered by snow on the front steps of the defendant's home after a social visit with the defendant. The court, Robert J. Colombo, Jr., J., granted the defendant's motion for summary disposition, holding that the defendant private landowner did not owe the plaintiff licensee a duty to warn him of naturally accumulated ice and snow on the steps. The plaintiff appealed, alleging the court erred in applying the "natural accumulation doctrine" in this case.

The Court of Appeals *held*:

The court erred in using the natural accumulation doctrine as the basis for the grant of the defendant's motion. However, the judgment must be affirmed because the plaintiff did not show that reasonable minds could differ regarding whether the defendant knew or had reason to know that there was ice under the snow.

1. The natural accumulation doctrine does not abrogate a private possessor's duty to licensees on the possessor's property.

2. It is not the status of the obstruction, natural or artificial, that frees a property owner from liability under the doctrine. Liability hinges on whether the encumbered pathway is public or private.

3. The plaintiff failed to show that the defendant breached the private possessor's duty to a licensee.

Affirmed.

O'CONNELL, J., dissenting in part, stated that the court's application of the natural accumulation doctrine should be affirmed. Neither a municipality nor a private landowner has an obligation to a licensee to remove the natural accumulation of ice or snow from any location, except where the municipality or private property owner, by taking affirmative action, has increased the travel hazard to the public.

1. NEGLIGENCE — LICENSEES — ICE AND SNOW.

  A possessor of land is subject to liability for physical harm caused to
  licensees by a condition on the land if, but only if, the possessor
  knows or has reason to know of the condition and should realize
  that it involves an unreasonable risk of harm to the licensees, the
  possessor should expect that the licensees will not discover or
  realize the danger, the possessor fails to exercise reasonable care
  to make the condition safe or to warn the licensees of the condi-
  tion and the risk involved, and the licensees do not know or have
  reason to know of the condition and the risk involved.

2. NEGLIGENCE — LICENSEES — NATURAL ACCUMULATION DOCTRINE — ICE AND
    SNOW.

  The natural accumulation doctrine, which shields possessors of pri-
  vate property from liability stemming from the natural accumula-
  tion of ice and snow on public sidewalks that abut the possessors'
  private property, does not abrogate a private possessor's duty to
  licensees on the possessor's private property; liability hinges on
  whether the encumbered pathway is public or private; the doctrine
  does not apply to the licensor-licensee context where the licensee's
  injury occurred on the possessor's private property.

*Rickel & Baun, P.C.* (by *Mark A. Baun*), for the
plaintiff.

*Draugelis & Ashton, L.L.P.* (by *Floyd C. Virant*),
for the defendant.

Before: HOEKSTRA, P.J., and DOCTOROFF and
O'CONNELL, JJ.

HOEKSTRA, P.J. In this slip and fall case, plaintiff
appeals an order granting defendant summary dispo-
sition under MCR 2.116(C)(10). The trial court held
that defendant, a private landowner, owed no duty to
plaintiff to warn him of naturally accumulated ice and
snow on the front steps of defendant's home. While
we do not agree that the "natural accumulation doc-
trine" bars plaintiff's claim, we affirm the trial court's
judgment on other grounds.

Defendant and plaintiff were acquaintances. One day, after a chance meeting in the community, defendant invited plaintiff to his home for coffee. Defendant drove plaintiff to his home, which they entered through a side door. After a time, plaintiff asked defendant to drive him home. Rather than leave through the side door, defendant led plaintiff to the front door and opened it for him. As defendant turned to lock the door, plaintiff started down the snow-covered steps. Suddenly, he slipped and fell on ice that lay under the snow.

Plaintiff sued, alleging that defendant breached his duty to plaintiff as a licensee by not warning him about the ice under the snow. Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that he was insulated from liability by the natural accumulation doctrine. The trial court applied the doctrine and granted the motion, finding that defendant had altered neither the natural accumulation of ice and snow nor the steps themselves.

A grant or denial of a motion for summary disposition is reviewed de novo on appeal. *Michigan Mut Ins Co v Dowell*, 204 Mich App 81, 86; 514 NW2d 185 (1994). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests whether there is factual support for a claim. *Dowell, supra* at 85. The trial court must consider the pleadings, affidavits, admissions, and other documentary evidence submitted by the parties and, giving the benefit of reasonable doubt to the nonmoving party, must determine whether a record could be developed leaving an issue on which reasonable minds might differ. *Id.* The nonmoving party must go beyond the pleadings to set forth specific facts showing that a genuine issue of material

fact exists and cannot simply rest on mere conjecture and speculation to meet the burden of providing evidentiary proof establishing a genuine issue of material fact. *Libralter Plastics, Inc v Chubb Group of Ins Cos*, 199 Mich App 482, 485-486; 502 NW2d 742 (1993).

While we disagree with the trial court's use of the natural accumulation doctrine as the basis for summary disposition, we uphold the judgment because plaintiff has not shown that reasonable minds could differ regarding whether defendant knew or had reason to know that there was ice under the snow.

### I. THE NATURAL ACCUMULATION DOCTRINE

The trial court in this case ruled that plaintiff's claim was barred by the natural accumulation doctrine. Defendant argues that the doctrine protects a private possessor of land from liability for injuries to licensees caused by naturally accumulated ice or snow on a possessor's property. However, plaintiff argues, and we agree, that the doctrine was never meant to apply to injuries on private property. Courts have consistently applied the doctrine to shield private possessors from liability stemming from the natural accumulation of ice and snow on public sidewalks that abut their property. However, while its evolution has rendered the doctrine's scope somewhat ambiguous, the doctrine does not abrogate a private possessor's duty to licensees on his property. Our holding today does not overturn existing law concerning the natural accumulation doctrine. Rather, by examining the doctrine's historical basis along with our Supreme Court's reasoning in *Quinlivan v Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 244, 260; 235 NW2d 732 (1975), we simply clarify its proper scope.

Indeed, as discussed below, our holding is consistent with the cases the dissent claims we are overruling.

Our Supreme Court applied the doctrine as early as 1885 in *McKellar v Detroit*, 57 Mich 158; 23 NW 621; 58 Am Rep 357 (1885). In that case, the plaintiff slipped on "a small ridge of ice formed by the trampling of snow" while using a city-maintained crosswalk. The question in the case was whether a statute providing a cause of action for a municipality's failure to keep public highways, streets, bridges, crosswalks, and culverts in good repair allowed the plaintiff to recover damages.[1] *Id.* at 159. The *McKellar* Court observed that the "natural meaning of the act . . . [was] to create liability only for having ways out of repair and defective on that account." *Id.* at 160. After determining that the statute did not refer to natural obstructions such as ice or snow, the Court noted that such cases were best decided on negligence principles. However, while municipalities are empowered to clear their streets, the Court declined to find that they had a duty, for tort purposes, to do so. The Court reasoned that such a duty was unreasonable given the magnitude of the task:

> Most communities may be relied on to do what is necessary and feasible. But no amount of diligence can supply an adequate force and adequate means to detect the inevitable accumulations of snow trampled into hardness on every cross-walk or in every roadway. [*Id.* at 162.]

Furthermore, the Court noted:

> It is possible that some legal duty ought to exist for clearing off such ridges as they are raised by the feet of passen-

---

[1] How Stat §§ 1442-1446.

gers; but to provide for it by means which will be reasonable and not oppressive on the many towns and municipalities throughout the State will be a task of some difficulty. We are satisfied no such liability has thus far been provided for. [*Id.* at 163.]

The Court's holding frees only municipalities from liability, and it does so in light of the monumental task of ensuring that every walkway and road is properly cleared of snow. It is not, as defendant implies, the status of the obstruction—natural or artificial—that frees one from liability; rather, liability hinges on whether the encumbered pathway is public or private.

In *Hampton v Master Products, Inc*, 84 Mich App 767; 270 NW2d 514 (1978), we held that "[t]he mere presence of snow or ice on a highway, street, or walk in wintertime, which causes travelers difficulty, does not constitute negligence on the part of the public authorities." *Id.* at 770. In that case, the plaintiff slipped and fell on a public sidewalk while trying to wade through a snowdrift. She sued the municipality under MCL 691.1402; MSA 3.996(102), which requires governmental agencies to maintain highways in "reasonable repair so that it is reasonably safe and convenient for public travel."[2] We upheld the municipality's liability because the accumulation of snow was unnatural, having likely resulted from the plowing of an adjacent street. *Hampton, supra* at 772.

We also recognized the doctrine in *Taylor v Saxton*, 133 Mich App 302; 349 NW2d 165 (1984). In that case we noted that "landowners owe no duty to pedestrians to clear the public sidewalk of natural accumula-

---

[2] Sidewalks such as the one on which the *Hampton* plaintiff slipped and fell are included in the statutory definition of "highway." *Hampton, supra* at 770.

tions of ice and snow" and held that a municipal ordinance requiring the occupant of property that abuts a public sidewalk to keep it clear of ice and snow "creates a public duty for which there is no private right of action." *Id.* at 306.[3]

Both *Hampton* and *Taylor* were cited by this Court in *Zielinski v Szokola,* 167 Mich App 611, 615; 423 NW2d 289 (1988), as authority for the following formulation of the natural accumulation doctrine:

> The general rule with regard to the liability of a municipality or property owner for injuries sustained by a licensee as a result of icy conditions is stated in a doctrine known as the natural accumulation doctrine. The doctrine provides that neither a municipality nor a landowner has an obligation to a licensee to remove the natural accumulation of ice or snow from any location. *Hampton v Master Products, Inc,* 84 Mich App 767; 270 NW2d 514 (1978); *Taylor v Saxton,* 133 Mich App 302; 349 NW2d 165 (1984).

The broad language of the *Zielinski* Court's formulation should be interpreted within the factual context of the case. In *Zielinski,* the plaintiff slipped on a municipal sidewalk while leaving the defendant's barber shop. The case concerned a business invitee injured on a public sidewalk abutting the business,

---

[3] The dissent cites *Taylor* for the proposition that "the natural accumulation doctrine applied to all locations regardless of the status of the injured person." *Post* at 642. In doing so, it commits the same error as the Court in *Zielinski v Szokola,* 167 Mich App 611; 423 NW2d 289 (1988). In *Taylor,* the victim was struck and killed by an automobile when snow-covered public sidewalks forced him to walk in the street. His representatives sued, alleging that the defendant businesses had a duty to clear the public sidewalks that abutted their property. The Court held that the defendant businesses had no duty under either common law or municipal ordinance to keep public sidewalks clear of the natural accumulations of ice and snow. *Id.* at 306. *Taylor* does not involve an injury to a private possessor's licensee on private property.

not a licensee on private property. *Zielinski, supra* at 620. To the extent that *Zielinski* appears to hold that the natural accumulation doctrine precludes a possessor's liability for injuries sustained by a licensee on private property, the holding is dictum.

Neither *Hampton* nor *Taylor*, the cases cited by the *Zielinski* panel, stand for such a broad formulation of the doctrine. Rather, they concern only liability under municipal statutes or ordinances for failing to keep public walks clear of ice and snow.[4] Neither case states the duty a private possessor owes his licensees regarding natural hazards on the private property.

Defendant and the dissent argue that our Supreme Court's decision in *Quinlivan, supra* at 260-261, preserved the natural accumulation doctrine as it applied to injuries sustained by a licensee on private property. In that case, the Court noted that the doctrine conflicted with the rigorous duty normally owed to a possessor's invitees. The Court cited with approval Judge HOLBROOK's dissent in *Bard v Weathervane of Michigan*, 51 Mich App 329; 214 NW2d 709 (1974), wherein he concluded that "the 'natural accumulation' rule historically arose in the context of municipal liability for care of public streets and sidewalks." *Quinlivan, supra* at 254, citing *Bard, supra* (HOLBROOK, J. dissenting). In the face of the tension between the doctrine and the duty normally owed to invitees, and in light of the doctrine's original rationale, the Court overruled existing case law to the extent it suggested

---

[4] Defendant also cites *Hall v Detroit Bd of Ed*, 186 Mich App 469; 465 NW2d 12 (1990), as support for the application of the natural accumulation doctrine. However, that case merely relies on *Zielinksi, supra*. In addition, the case involves a slip and fall on municipal property. It says nothing about a private possessor's duty to his licensees.

that "the natural accumulation rule applied in an invitor-invitee context . . . ." *Quinlivan, supra* at 260. The Court did not discuss the doctrine's application to a private possessor's licensees.

Defendant and the dissent essentially argue that because the *Quinlivan* Court did not address the licensor-licensee context, the doctrine is preserved as it relates to a possessor's duty to a licensee. On the contrary, the force of *Quinlivan's* logic reaches the facts in the instant case. Ordinarily, a possessor owes at least a marginal duty of care to his licensees. In *Preston v Sleziak*, 383 Mich 442, 453; 175 NW2d 759 (1970), the Supreme Court held that 2 Restatement Torts, 2d, § 342, p 210,  best describes a private possessor's duty to his licensees:

> "A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,
>
> "(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and
>
> "(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and
>
> "(c) the licensees do not know or have reason to know of the condition and the risk involved." [*Preston, supra* at 453, quoting 2 Restatement Torts, 2d, § 342, p 210.]

In comment *e* to § 342, the Restatement's drafters explicitly eschewed any distinction between natural and artificial hazards. The natural accumulation doctrine, insofar as it voids a possessor's liability for injuries caused by naturally accumulated ice or snow, stands in tension with the duty normally owed to a

licensee. In resolving the tension, we are compelled to follow our Supreme Court's reasoning in *Quinlivan*. There the Court unequivocally rejected the notion that ice and snow are always open and obvious dangers, *Quinlivan, supra* at 261, a conclusion that does not change simply because the injured person is a licensee rather than an invitee. Logically, therefore, a licensee could be injured by a natural accumulation of ice and snow that was not open and obvious and was a danger known to the landowner. *Quinlivan* does not permit us to foreclose a possessor's liability by applying the natural accumulation doctrine in the private licensor-licensee context.[5] As Judge HOLBROOK stated in his dissent in *Bard, supra* at 335:

> Even conceding the continuing validity of [the natural accumulation doctrine as applied to municipalities], this writer does not see how it applies where private property, including private sidewalks, is concerned . . . .

The dissent in this case claims that we ignore the holdings of existing case law. We disagree. From the outset we note that the cases in question are factually distinct from the instant case, where a licensee was

---

[5] The dissent does not address the effect of the *Quinlivan* Court's logic on the parallel tension in the instant case, choosing instead to read the case as preserving the natural accumulation doctrine as it applies in the private licensor/licensee context. However, this understanding of *Quinlivan's* holding ignores the historical analysis employed by our Supreme Court in that case. Furthermore, neither the defendant nor the dissent cites any case law applying the natural accumulation doctrine to the instant context. Quite the contrary, they both ignore this Court's holding in *Leep v McComber*, 118 Mich App 653, 665; 325 NW2d 531 (1982), where we held that a landowner did have a duty to his licensees regarding the natural accumulation of ice and snow. Finally, the dissent does not explain why, in evaluating the duty a possessor owes to his licensees, ice and snow should be distinguished from other natural hazards.

injured on a private possessor's property. For example, in *Anderson v Wiegand*, 223 Mich App 549; 567 NW2d 452 (1997), this Court found a possessor could be liable when an invitee slipped and fell on a patch of ice on the possessor's private property. In *Morrow v Boldt*, 203 Mich App 324, 330; 512 NW2d 83 (1994), this Court addressed the question whether a driveway apron was part of a municipal easement. Once it determined that it was, the Court properly applied the natural accumulation doctrine to insulate the abutting property owner from liability. In *Hall v Detroit Bd of Ed*, 186 Mich App 469, 471; 465 NW2d 12 (1990), this Court found that the natural accumulation doctrine barred a plaintiff's recovery for injuries sustained when she slipped and fell on property belonging to a public school. Because the school grounds were municipal property, the doctrine was correctly applied. Finally, *Mendyk v Michigan Employment Security Comm*, 94 Mich App 425, 428; 288 NW2d 643 (1979), also involved injuries from a plaintiff's slip and fall on a public sidewalk. In sum, none of the cases cited involved injuries to licensees on private property on account of the natural accumulation of ice and snow.

We also note that *Hall, supra* at 471, and *Morrow, supra* at 327, insofar as they articulate a broad formulation of the natural accumulation doctrine, cite *Zielinski* as authority for that formulation. As noted above, the *Zielinski* Court's apparently broad formulation—understood within its factual context and in light of the authority the Court cites—actually stands for the much narrower proposition that the doctrine applies to injuries on public property. As stated by the *McKellar* Court, it is simply unreasonable to hold a

municipality liable for injuries stemming from the natural accumulation of ice and snow; the municipality does not have the means to ensure that every walk is clear all the time. *McKellar, supra* at 162-163. If the municipalities cannot be held responsible, then it follows that private possessors who, by statute or ordinance, are required to keep the public walks abutting their property clear should likewise be protected under the doctrine. However, that logic does not extend so far as to abrogate the duty a private possessor owes to his licensees once they have entered his property. None of the cases cited by the defendant or the dissent fit this last factual situation. Our decision today does nothing to disturb those cases that hold that the natural accumulation doctrine protects municipalities, and those private possessors whose land abuts municipal sidewalks, from injuries caused by the natural accumulation of ice and snow on municipal property.

Finally, we note that recent decisions of this Court have recognized a duty when considering a private possessor's liability to his licensee regarding the natural accumulation of ice and snow. In *White v Badalamenti*, 200 Mich App 434; 505 NW2d 8 (1993), the plaintiff, a licensee, slipped and fell on ice that had accumulated in a depression on the defendants' sidewalk. Rather than analyze the plaintiff's claim under the natural accumulation doctrine, the Court applied the following standard:

> A possessor of land is liable for injuries to a licensee caused by a condition on the land if the possessor has reason to know of the condition, should realize that it involves an unreasonable risk of harm, should expect that licensees will not discover the danger, and fails to exercise reasona-

ble care either to make the condition safe or to warn licensees of the danger. [*Id.* at 437.]

No mention was made of the natural accumulation doctrine. Furthermore, in a case that predates *Zielinski*, another panel of this Court held that a possessor owed his licensee some duty of care with respect to the natural accumulation of ice:

> Neither recent case law recited herein nor § 342 of the Restatement indicate that no duty is owed to the licensee by landowners respecting hazards arising from natural accumulation of ice and snow. It is logical to conclude that the defendant in the instant case was under a duty to exercise reasonable care to warn of or eliminate certain conditions on his property which he should have realized involved an unreasonable risk of harm to plaintiff. [*Leep v McComber*, 118 Mich App 653, 665; 325 NW2d 531 (1982).]

Therefore, we find that the natural accumulation doctrine does not apply to the licensor-licensee context where the injury occurred on the possessor's private property, and the trial court's grant of summary disposition on this basis was improper.

## II. DEFENDANT'S KNOWLEDGE

While we find that plaintiff's claim is not barred by the natural accumulation doctrine, plaintiff has failed to show that there is a genuine issue of material fact concerning whether defendant knew, or had reason to know, that there was ice under the snow.

It is difficult to imagine, under the Restatement formulation of a landowner's duty to a licensee, the actual circumstances in which a possessor would be liable to his licensee for a slip and fall because of naturally accumulated ice and snow. The proper inquiry

focuses on the parties' knowledge of the danger. In comment *a* to Restatement, § 342, p 210, the drafters note that "knowledge" implies not only knowledge of the dangerous condition, but also that "the chance of harm and the gravity of the threatened harm are appreciated." However, if a danger is open and obvious, the need to warn is obviated. *White, supra* at 437. Therefore, a possessor of land must either know of the danger or have reason to know of the danger, but the danger cannot be open and obvious—a very narrow class of risks given the usually obvious nature of any hazard stemming from naturally accumulated ice and snow. Any danger that is not obvious is not likely to be known to the landowner.

Plaintiff claims that the ice was caused by accumulated snow melting and freezing. The ice was then covered by a fresh layer of snow, hiding it from casual inspection. While the ice was not an open and obvious danger, plaintiff argues that defendant admitted that he knew there was ice under the snow. In support of this claim, he cites the following testimony from defendant's deposition:

> *Q*: Do you remember what the ice and snow looked like on the front porch that day?
>
> *A*: Well, snow.
>
> *Q*: Was there ice under the snow? Do you remember?
>
> *A*: I don't remember exactly.
>
> *Q*: Okay.
>
> *A*: Exactly I don't—it was snow and icy, but—
>
> *Q*: (Interposing) Ice was under the snow?
>
> *A*: I think.

Defendant then testified that he could not recall when it last snowed, nor could he recall when he had most recently shoveled or salted the steps.

Nothing in the excerpted testimony suggests that defendant knew, before plaintiff's accident, that there was ice under the snow. We disagree with plaintiff's characterization of the above testimony as an admission that defendant knew the nature and extent of the hazard before plaintiff began descending the steps. However, plaintiff also argues that defendant should have known that there would be ice under the steps. To support this contention, plaintiff introduced an affidavit from a meteorologist who claims that weather conditions in the area before the accident were such that snow melted then froze again. Several inches of snow then covered the ice. However, the meteorologist's affidavit says nothing about defendant's knowledge of the ice under the snow on his steps. Insofar as plaintiff seeks to use general knowledge of local weather conditions to show that defendant should have known that ice lay under the snow on his steps, the same knowledge can be imputed to plaintiff. Plaintiff has offered no evidence that defendant actually saw the ice on the steps, that defendant or a member of his family slipped on it before plaintiff's accident, or that defendant even used the front door to his house in the days immediately preceding the accident.[6] Indeed, the fact that defendant was obviously prepared to follow plaintiff down the steps suggests that he did not appreciate the potential dan-

---

[6] Defendant testified during his deposition that members of his household used both a side door and the front door for ingress and egress. Plaintiff failed to ask defendant whether he had used the steps since ice had formed on them.

ger. On the basis of the evidence presented, there is no material question of fact.

Affirmed.

DOCTOROFF, J., concurred.

O'CONNELL, J. (*concurring in part and dissenting in part*). I agree with the majority that the trial court properly granted defendant's motion for summary disposition, and I concur in the reasoning and result the majority reaches in part II of its opinion. I respectfully part from the majority, however, in that where the majority declares that the trial court erred in finding the natural accumulation doctrine applicable to a licensee on private property and chooses instead to affirm the court's decision by recourse to general principles of liability, I would affirm the learned trial judge's application of the natural accumulation doctrine.

As the majority states, a possessor of land may be liable for injury suffered by a licensee as the result of a condition on the property if the possessor knows, or should know, of the condition, should expect the licensee not to discover the danger, and fails to make reasonable efforts to warn of, or otherwise obviate, the danger. See *Preston v Sleziak*, 383 Mich 442, 453; 175 NW2d 759 (1970), citing 2 Restatement Torts, 2d, § 342, p 210. However, "[a]ttempts by a social guest to recover against his host for injuries allegedly caused by slipping on ice or snow which had been allowed to accumulate upon the approaches to the host's premises have been uniformly unsuccessful." 25 ALR2d 598, § 5, p 608. Recognition of this historical

limitation on liability has engendered this state's natural accumulation doctrine, which provides that " 'neither a municipality nor a landowner has an obligation to a licensee to remove the natural accumulation of ice or snow from any location, except where the municipality or property owner, by taking affirmative action, has increased the travel hazard to the public.' " *Anderson v Wiegand*, 223 Mich App 549, 555, n 2; 567 NW2d 452 (1997), quoting *Morrow v Boldt*, 203 Mich App 324, 327; 512 NW2d 83 (1994). I believe that this rule remains a sound principle of law, comporting with and flowing from the general principles on which the majority relies. Further, I am concerned that the majority appears to overrule or disregard several cases that recognize the traditional doctrine.

Until 1975, the natural accumulation doctrine applied to all locations regardless of the status of the injured person. *Taylor v Saxton*, 133 Mich App 302, 305; 349 NW2d 165 (1984), citing *Weider v Goldsmith*, 353 Mich 339; 91 NW2d 283 (1958); *Bard v Weathervane of Michigan*, 51 Mich App 329; 214 NW2d 709 (1974); *Gillen v Martini*, 31 Mich App 685; 188 NW2d 43 (1971). However, in 1975 the Michigan Supreme Court announced that "[t]o the extent preexisting case law authority indicated that the natural accumulation rule applied in an invitor-invitee context, that authority is overruled." *Quinlivan v Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 244, 260; 235 NW2d 732 (1975). The Court thus expressly abrogated the natural accumulation doctrine only with regard to the invitor-invitee relationship, and the appellate courts of this state have otherwise contin-

ued to recognize and respect the doctrine. E.g., *Anderson, supra* at 555, n 2; *Morrow, supra* at 327; *Zielinski v Szokola*, 167 Mich App 611, 615; 423 NW2d 289 (1988), overruled in part on other grounds by *Robinson v Detroit (On Remand)*, 231 Mich App 361; 586 NW2d 116 (1998); *Taylor, supra* at 305-306.[1]

Until today, the natural accumulation doctrine applied equally to public and private entities. In *Mendyk v Michigan Employment Security Comm*, 94 Mich App 425; 288 NW2d 643 (1979), this Court observed that "[h]istorically, the 'natural accumulation' rule has been used not only to preclude a plaintiff's recovery against a governmental unit but also *to preclude recovery in a suit against a private land owner.*" *Id.* at 430 (emphasis added), citing *Bard, supra,* and *Gillen, supra.* In *Hall v Detroit Bd of Ed*, 186 Mich App 469; 465 NW2d 12 (1990), this Court stated that the "natural accumulation doctrine provides that neither a municipality *nor a landowner* has a duty to a licensee to remove the natural accumulation of ice and snow from *any location.*" *Id.* at 471 (emphases added), citing *Zielinski, supra* at 615. See also *Anderson, supra*; *Morrow, supra.*

The majority minimizes the significance of the language affording to the natural accumulation doctrine a broad scope concerning licensees in *Anderson, Morrow, Hall, Zielinski, Taylor,* and *Mendyk,* and then proceeds to discard the doctrine for licensees on

---

[1] The majority contends that it is not disturbing existing case law concerning the natural accumulation doctrine. I respectfully disagree. As these cases indicate, the natural accumulation doctrine historically applied to both private and municipal property, and after today it applies only to municipal property. Although the majority purports only to clarify the scope of the rule, I conclude that the majority is in fact affecting a substantial revision.

private property.[2] However, the majority wryly acknowledges that "[i]t is difficult to imagine, under the Restatement formulation of a landowner's duty to a licensee, the actual circumstances in which a possessor would be liable to his licensee for a slip and fall because of naturally accumulated ice and snow." *Ante* at 638. My fear is that social guests who slip on icy passageways will now muster a great deal of imagination in attempting to recover under general principles of liability, now that the specific limitation of the natural accumulation doctrine is not available as a defense for social hosts. It would be better for this state's jurisprudence if there remained a specific rule standing for the proposition that a social host is not responsible for the dangers inherent in ordinary winter precipitation.[3] In fact, the majority, in discarding for licensees the natural accumulation doctrine while trumpeting the Restatement formulation, appears to be making a distinction without a difference. It is difficult to envision a factual setting under which the two approaches would yield different results. Indeed, if this case sounds the death knell for the traditional natural accumulation doctrine as con-

---

[2] The majority says that it is only distinguishing, not overruling, these cases in concluding that the natural accumulation doctrine applies only to public, not private property. Although it is true that these cases all happen to concern property that is best characterized as public, it is also true that the plain language (words) of these cases announces clearly that the doctrine, as applied to licensees, is fully applicable to private property.

[3] "Must an Eskimo warn a departing guest that he might slip on the ice on his way from the igloo to his dogsled? Must a . . . homeowner warn a . . . houseguest upon departure that, since it has snowed, the steps or walk will likely be slippery?" *Flintrop v Lefco*, 52 Wis 2d 244, 251; 190 NW2d 140 (1971) (R. W. Hansen, J., dissenting). Indeed, without the security of the precise rule of the natural accumulation doctrine, a homeowner may now "need insurance coverage to protect against his failing to warn a departing guest that . . . if it snows, it may be slippery." *Id.* at 254.

cerns licensees, conscientious adherence to the general principles that the majority espouses in its place should lead to the rediscovery of the traditional rule. In any event, if this Court is ever faced with a factual setting under which the natural accumulation doctrine would bar recovery but the general Restatement principles would not, that would be the time to reconsider this state's traditional rule. Because the present case does not present this need, I do not feel comfortable using it to discard the historical doctrine. For these reasons, I respectfully decline to join part I of the majority opinion.