# STATE OF MICHIGAN

# COURT OF APPEALS

WHITNEY SCHUSTER,

  Plaintiff-Appellant,

v

RIVER OAKS GARDEN APARTMENTS LLC,

  Defendant-Appellee.

UNPUBLISHED
November 30, 2017

No. 335246
Kent Circuit Court
LC No. 14-005418-NO

Before: HOEKSTRA, P.J., and STEPHENS and SHAPIRO, JJ.

PER CURIAM.

Plaintiff Whitney Schuster appeals by right the trial court's order granting summary disposition to her landlord, defendant River Oaks Garden Apartments, LLC. We reverse and remand.[1]

Plaintiff alleges she was injured on February 19, 2013, at defendant's apartment complex,[2] at approximately 6:35 a.m. as a result of slipping on an icy sidewalk. According to plaintiff, the fall occurred as she took her first steps onto the sidewalk surrounding the complex's mailbox kiosk. As a result of her fall, plaintiff broke her ankle requiring surgical repair with hardware placement.

Plaintiff's suit is based on MCL 554.139, which requires landlords of residential property to maintain all common areas so that they are fit for the use intended. It reads:

---

[1] This case is before us for the second time. Initially, we affirmed the dismissal of plaintiff's general negligence claim on the basis of the open and obvious doctrine and we remanded with instructions to consider whether plaintiff had pleaded an independent claim under MCL 554.139(1)(a), and whether defendant was entitled to summary disposition as to such a claim.

[2] According to defendant's brief, "River Oaks is a 380-unit apartment complex [which] offers high-end apartment living, including numerous amenities such as a swimming pool, spa, lighted tennis courts, and a fully-equipped resident business center. The property has a dedicated management and maintenance staff on site."

-1-

(1) In every lease or license of residential premises, the lessor or licensor covenants:

(a) That the premises and all common areas are fit for the use intended by the parties.

(b) To keep the premises in reasonable repair during the lease or license, and to comply with the applicable health and safety laws of the state and of the local unit of government where the premises are located, except when the disrepair or violation of the applicable health or safety laws has been caused by the tenants [sic] wilful or irresponsible conduct or lack of conduct.

(2) The parties to the lease or license may modify the obligations imposed by this section where the lease or license has a current term of at least 1 year.

(3) The provisions of this section shall be liberally construed, and the privilege of a prospective lessee or licensee to inspect the premises before conducting a lease or license shall not defeat his right to have the benefit of the covenants established herein.

Defendant moved for dismissal of plaintiff's claim on two grounds. First, defendant asserted that plaintiff had failed to present any evidence that the sidewalk on which she fell was not "fit for the use intended by the parties." Second, defendant argued that it did not have notice of the extremely icy conditions. The trial court granted summary disposition based on the first of these arguments. On appeal, defendant argues that if we reverse the trial court's conclusion, we should nevertheless affirm on the grounds of a lack of notice.

When a trial court grants a motion for summary disposition on the grounds that there is no question of material fact, we review its ruling de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Like the trial court we "must consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party." *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993). To the extent that the motion for summary disposition also involves questions of statutory interpretation, we also apply a de novo standard of review. *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007).

## I. EVIDENCE PRESENTED

According to her deposition testimony, plaintiff moved into the defendant's apartment complex in May, 2012, after moving to Michigan from Texas. She testified that before she signed the lease, she asked defendant's agent about snow removal and was told that removal would take place before she left for work.

In his deposition, defendant's maintenance manager testified that defendant's own employees are responsible for dealing with icy or snowy conditions on the walkways and

common areas. A contractor clears and salts the parking lots. He testified that he and his staff normally arrive at the premises at 6:00 a.m., and that if there is snow or ice in the common areas when they arrive, he and his staff begin salting between 6:00 a.m. and 7:00 a.m. He also testified that if they are aware ahead of time of snowy or icy conditions developing overnight, they sometimes come as early as 5:00 a.m. and that if freezing rain is expected, they sometimes apply salt preventatively before the freeze occurs. He testified that the sidewalk surrounding the mail kiosk is one of the first areas they attend to.

The property's general manager also testified in deposition. When asked how management determines when to address snowy or icy conditions, she testified that she monitors weather conditions and that she is "usually aware of what's coming in the weather." More specifically, she also testified that the maintenance manager will let her know if the forecast is bad and if they need to come in early to salt.

According to records from the National Climate Data Center, light rain and snow began to fall about 6:00 p.m. on the evening before plaintiff's fall. It continued until about 5:00 a.m. During that time, the temperatures dropped from over 40 degrees to below freezing. Twenty four hours before the rain started on Monday, February 19th, it was forecasted that there would be severe icy conditions early Tuesday morning.

There is substantial evidence that the conditions, as predicted, developed overnight and that by the time of plaintiff's fall, they were severe. Plaintiff testified that she saw salt trucks on the road about 2:00 a.m. Defendant's property manager described the conditions as she was walking her dog at 6:30 a.m. as "glistening glass" and that things looked like they were "dipped in glass". She continued: "You know, like where signs, everything is just kind of lightly coated with a beautiful glass . . . everything looked dipped. The trees and everything, the branches, *everything was coated that morning*." (Emphasis added). She also stated in her written incident report that "it was an intense ice storm." Similarly, the invoice submitted by a contractor for salting defendant's parking lots that morning recorded that the "parking lot surfaces are very icy."

According to defendant's "snow and ice removal log," there had been no salting of common areas during the 12 days prior to plaintiff's fall. On the day in question, salting began at 7:00 a.m., about half hour after plaintiff fell.

## II. LEGAL ANALYSIS

### A. FIT FOR THE USE INTENDED

Defendant does not dispute that the sidewalk was intended for walking and specifically for access to the apartment complex mailboxes. However it argues that the sidewalk, even if ice

covered,[3] was fit for its intended purpose and that no reasonable juror could conclude otherwise. The trial court agreed, granting summary disposition pursuant to MCR 2.116(C)(10).[4]

In *Allison v AEW Capital Mgt, LLP*, 481 Mich 419; 751 NW2d 8 (2008), the Supreme Court considered a landlord's statutory duty regarding common areas, particularly as concerns natural accumulations of snow and ice. It held that "the natural accumulation of snow and ice is subject to the lessor's duty established in MCL 554.139(1)(a)" to keep the premises and common areas "fit for the use intended by the parties." *Id*. at 438 (quotation marks omitted).[5] However, after reviewing the record, it concluded that no reasonable juror could find that the parking lot was not fit for its intended use. *Id*. at 430.

Significantly in *Allision*, there was no evidence that the snow precluded driving vehicles in and out of the lot and storing vehicles there. "A parking lot is constructed for the primary purpose of storing vehicles on the lot." *Allison*, 481 Mich at 429. Thus, the lot remained fit for its intended primary purpose of storing vehicles. The Court agreed that the use of a parking lot also requires "reasonable access to [the] parked vehicles," *id*., however, the Court concluded that "[u]nder the facts presented in this record, we believe that there could not be reasonable differences of opinion regarding the fact that tenants were able . . . to access those vehicles." *Id*. at 430. It noted that "[m]ere inconvenience of access" does not render the parking lot unfit. *Id*.

The rules defined in *Allison* lead to a different result here. First, this case involves a sidewalk, not a parking lot. Unlike a parking lot, the primary intended use of a sidewalk is to provide a dedicated walking path. Therefore, determining whether a sidewalk is fit for its purpose must be focused on pedestrian travel, not vehicular travel to which pedestrian access is collateral.[6] Second, the conditions were clearly "more exigent" than in *Allison*. A sidewalk need not in be in the most accessible condition possible and it is not necessary that every potential hazard be eliminated. However, as held in *Allison*, it must provide "reasonable access" to pedestrians seeking to use it. *Allison*, 481 Mich at 429-430. Defendant argues that a sidewalk

---

[3] As noted above, there is ample evidence that all exposed surfaces were coated in a layer of ice. There is no testimony or other evidence to suggest that the icy conditions were patchy or limited to the location where plaintiff fell.

[4] Although the trial court did not specify under which sub-rule it found summary disposition appropriate because the parties attached documentary evidence to their summary disposition briefs, and the statements at the hearing indicate that the trial court considered this evidence, we treat the motion as being granted pursuant to MCR 2.116(C)(10). See *Detroit News, Inc v Policemen and Firemen Retirement Sys of Detroit*, 252 Mich App 59, 66; 651 NW2d 127 (2002).

[5] The Court also held that the duties defined in MCL 554.139(1)(b) applied only to premises and not common areas. *Allison*, 481 Mich at 435. It also held that a parking lot in an apartment complex is a "common area." *Id*. at 438.

[6] "[T]enants do not use a parking lot for its intended use by merely walking in the lot. Walking in a parking lot is secondary the parking lot's primary use." *Hadden v McDermitt Apartments*, LLC, 287 Mich App 124, 132; 782 NW2d 800 (2010).

coated in ice is merely an inconvenience and it remains fit for pedestrian use.  Plaintiff argues that such conditions are not just an inconvenience, but rather, it posed a danger sufficient to deny tenants reasonable access along the sidewalks and rendered them unfit for their intended use. We conclude that "reasonable differences of opinion" exist regarding the sidewalk's fitness for its intended use.[7]

## B.  NOTICE OF THE CONDITION

Defendant argues that we should, nevertheless, affirm summary disposition because there is no evidence to support a finding that defendant had either direct or constructive notice of the conditions prior to plaintiff's fall.  We initially note, as we did in our previous opinion in this case, that there do not appear to be any published decisions that establish that notice of the condition is required to establish a breach of the duty under MCL 554.139(1)(a).[8]  In any case, we conclude that there is a question of fact whether defendant had notice of the fact that extremely icy conditions would exist on their sidewalks in the early morning of February 19, 2013.

As noted above, there was evidence that 24 hours before plaintiff fell, the coming ice storm was known and predicted.    On that prior day, the chief meteorologist of a local television station issued a report that:

> Rain starts late afternoon at the Indiana border and moves north across the area this evening.  Rainfall amounts should be ¼ to ½ inch.  Winter Weather Advisory for Tuesday for the entire area!  The cold air comes in after midnight and the rain will change to snow. *BIG WEATHER STORY. Flash freeze for the Tues AM rush hour.*  It could be nasty . . . after about 1/3" rain and melting snow first, with puddles . . . then temperature falls to the upper 20's and it starts snowing for the Tues AM commute.  That could make for *a very slippery Tues. AM* . . . if you have the choice stay put on Tues. (Emphasis added).

Defendant directs our attention to *Altairi v Alhaj*, 235 Mich App 626, 640;  599 NW2d 537 (1999), where we held that a meteorologist's after-the-fact reconstruction of what conditions he believes existed at the time of the plaintiff's injury was not sufficient to establish that the premises owner should have known that there was ice beneath a layer of snow.  This case is clearly different.  It does not involve an after-the-fact reconstruction of what the conditions were

---

[7] Unless the evidence demonstrates that "there could not be reasonable differences of opinion," the question of a sidewalk's fitness is a question to be determined by the jury. *Allison* at 430.  In *Benton v Dart Props, Inc.*, 270 Mich App 437, 444; 715 NW2d 335 (2006), our Court expressed the view that "a sidewalk covered with ice is not fit for [its intended] purpose," nevertheless, it remanded for a jury trial.

[8] Certainly no such requirement appears in the language of MCL 554.139(1) which governs this cause of action.  "We will not judicially legislate by adding language to the statute." *Empire Iron Mining Partnership v Orhanen*, 455 Mich 410, 421; 565 NW2d 844, 849 (1997).

so as to suggest that a premises owner should have noticed the alleged ice under the snow.[9] To the contrary, in this case, the evidence is that there was a timely *warning* of freezing conditions that was available to defendant *before* the freeze actually occurred. Thus, to the degree a showing of notice is required, plaintiff has presented sufficient evidence to establish a question of fact. Moreover, in this case there is testimony from defendant's managers that they monitor weather conditions and take early action when warned of impending storms or freezing conditions. While the evidence of notice is not conclusive, it is plainly sufficient to establish a question of material fact.

Reversed and remanded for further proceedings. Appellant, as prevailing party may tax costs pursuant to MCR 7.219. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro

---

[9] We also note that *Altairi* was decided before cases in which we have held that the mere presence of snow provides notice that there may be ice beneath. See, e.g., *Ververis v Hartfield Lanes*, 271 Mich App 61; 718 NW2d 382 (2006); *Hoffner v Lanctoe*, 492 Mich 450; 821 NW2d 88 (2012).