*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KATHLEEN WEZALIS,

       Plaintiff-Appellant,

v

ANNE ROSENBERG,

       Defendant/Cross-Defendant-Appellee,

and

WB MAINTENANCE, INC.,

       Defendant/Cross-Plaintiff.

UNPUBLISHED
January 27, 2022

No. 347613
Oakland Circuit Court
LC No. 2017-158409-NO

ON REMAND

Before: M. J. KELLY, P.J., and BORRELLO and CAMERON,[1] JJ.

PER CURIAM.

This case comes to us on remand from our Supreme Court. In our prior opinion, *Wezalis v Rosenberg*, unpublished per curiam opinion of the Court of Appeals, issued April 2, 2020 (Docket No. 347613), p 1, vacated and remanded *Wezalis v Rosenberg*, ___ Mich ___; 964 NW2d 601 (2021), this Court summarized the facts as follows:

> At the time of the incident giving rise to this appeal, plaintiff owned a company that was involved in handling the personal property portion of insurance claims for damage caused by fire or water. Rosenberg had apparently hired plaintiff, and they had arranged for plaintiff to visit Rosenberg's house on

[1] Judge Cameron was randomly selected to replace our departed colleague, Judge Karen Fort Hood.

-1-

December 12, 2016, to "tag" various items of Rosenberg's personal property so as to indicate how those items would be handled.

The night before plaintiff's scheduled appointment at Rosenberg's house, a snowstorm blew into the area. Plaintiff contacted Rosenberg and unsuccessfully attempted to postpone the scheduled appointment due to the 11 inches of snow that had been predicted. Plaintiff asked Rosenberg again on the morning of December 12, 2016, about postponing the appointment scheduled for that morning. Plaintiff testified at her deposition that it was snowing that morning and that there already was "a lot of snow on the ground." Rosenberg replied that she was ready for plaintiff to come and perform the agreed-upon work. According to plaintiff's deposition testimony, Rosenberg insisted that plaintiff keep the appointment, and plaintiff decided to do so. Plaintiff acknowledged that she could have chosen not to accept the job but nonetheless decided to accept and go to Rosenberg's house.

Plaintiff left her house at approximately 8:15 a.m. that morning to drive to Rosenberg's house. A significant amount of snow had accumulated on the roads, and it was cold. Plaintiff testified that she drove with caution because of the road conditions. When plaintiff arrived at Rosenberg's house, plaintiff could see that the driveway had been "somewhat plowed" but that there were still patches of snow on the driveway. She parked her vehicle in Rosenberg's driveway and waited for two of her employees to arrive. When her employees arrived, plaintiff got out of her vehicle and walked around the back of her vehicle to the rear passenger door to get her supplies from the back seat. According to testimony provided by one of her employees, plaintiff was holding onto the vehicle as she walked. Plaintiff testified that she walked around to open the door and fell down, hitting her wrist on the driveway. Plaintiff stated, "I was cautious walking around because there was snow." She further testified that she did not know what caused her to fall. According to plaintiff, she "saw snow" but "did not see ice." Plaintiff's employee testified that there was ice on the driveway.

Plaintiff filed this action, asserting a claim of premises liability against Rosenberg. Rosenberg subsequently moved for summary disposition under MCR 2.116(C)(10). The trial court issued a written order granting summary disposition in favor of Rosenberg and dismissing plaintiff's premises liability claim. The trial court determined that plaintiff was an invitee on Rosenberg's property and, therefore, that the highest duty of care applied under a premises liability framework. However, the trial court concluded that even under this standard, Rosenberg was entitled to summary disposition in her favor because there was no genuine issue of material fact that the hazard presented by the snowy condition of the driveway was open and obvious and not effectively unavoidable. [*Id*. at 1-2.]

On appeal, this Court concluded that there was no genuine issue of material fact that the hazardous risk was open and obvious and was not effectively unavoidable. *Wezalis*, unpub op at 4-5. This Court stated: "[t]he mere fact that a plaintiff's employment might involve facing an open and obvious hazard does not make the open and obvious hazard effectively unavoidable." *Id*. at 5, quoting *Bullard v Oakwood Annapolis Hosp*, 308 Mich App 403, 412; 864 NW2d 591 (2014)

(quotation marks omitted).[2]  Finally, this Court concluded that because the hazardous condition was open and obvious, Rosenberg had no duty to remedy the condition regardless of whether she knew of the condition. *Id*. at 6.  Thus, this Court affirmed the trial court's order granting summary disposition in favor of Rosenberg. *Id*.

On July 20, 2020, plaintiff filed an application for leave to appeal.  On October 8, 2021, the Michigan Supreme Court vacated the judgment of this Court and remanded to this Court for reconsideration in light of *Livings v Sage's Investment Group*, ___ Mich ___; ___ NW2d ___ (2021) (Docket No. 159692).  *Wezalis v Rosenberg*, ___ Mich ___; 964 NW2d 601 (2021).  For the reasons set forth in this opinion, we reverse the trial court's grant of summary disposition and remand this matter to the trial court for further proceedings consistent with this opinion.

## I. ANALYSIS

Our Supreme Court in *Livings* wrote about the special aspect of effective unavoidability in the context of hazards that one must confront to enter their place of employment. *Livings*, ___ Mich at ___; slip op at 2.  Thus, on remand this Court is tasked with deciding whether the hazard presented in this case was effectively unavoidable.

We begin our analysis by nothing that: "[i]n general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001).  "[T]he general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers[.]" *Id.* at 517.  However, "if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Id*.  "This Court has discussed two instances in which the special aspects of an open and obvious hazard could give rise to liability: when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable*." *Hoffner v Lanctoe*, 492 Mich 450, 463; 821 NW2d 88 (2012).  In *Lugo*, 464 Mich at 519, the Court provided the following illustration of an effectively unavoidable condition:

> [S]uch a situation might involve, for example, a commercial building with only one exit for the general public where the floor is covered with standing water.  While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water.  In other words, the open and obvious condition is effectively unavoidable.

"[T[he standard for 'effective unavoidability' is that a person, for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard.  As a parallel conclusion, situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Id*. at 469.  In *Hoffner*, the Court applied this standard, concluding that the plaintiff's desire to use her fitness center membership did not force her to confront the hazard, and stated, "[a] general interest in using, or even a contractual right to use, a business's services simply

---

[2] As discussed below, *Bullard* has been overruled.

does not equate with a compulsion to confront a hazard and does not rise to the level of a 'special aspect' characterized by its unreasonable risk of harm." *Id*. at 472-473.

In *Livings*, ___ Mich at ___; slip op at 2, our Supreme Court concluded that "an open and obvious hazard can become effectively unavoidable if the employee confronted it to enter his or her workplace for work purposes." The Court explained that, in analyzing the issue, a court must consider whether a reasonable individual in the plaintiff's circumstances would have used any alternatives to avoid confronting the hazard. *Id*. at ___; slip op at 2. Relying on the approach found in 2 Restatement Torts, 2d, § 343A, pp 215-221, *id*. at ___; slip op at 9-13, the Court stated:

> Given that our state is prone to winter, it is reasonable to anticipate that many businesses will remain open even during bleak winter conditions. A landlord cannot expect that every one of its tenant's employees will be permitted to stay home on snowy days. Therefore, it is reasonable to anticipate that a person will proceed to encounter a known or obvious danger for purposes of his or her work. Accordingly, an open and obvious hazard can become effectively unavoidable if the employee confronted it to enter his or her workplace for work purposes. [*Id*. at 13-14.]

The Court further noted that the inquiry is not subjective, but "centers on whether a reasonable premises possessor in the defendant's circumstances could reasonably foresee that the employee would confront the hazard despite its obviousness." *Id*. at 14. The Court went on to say that "[t]his standard's application will depend on the facts of the case, but the key is whether alternatives were available and would have been used by a reasonable person in the employee's circumstances." *Id*. at 15. Possible considerations include whether the employee could have taken a different path to work, whether the employee would need to breach the employer's policies to avoid the condition, and what the consequences of a breach might be. *Id*. at 15-16. However, a court cannot conclude "that a hazard was avoidable simply because the employee could have elected to skip work or breach other requirements of his or her employment." *Id*. at 16.

In reaching this conclusion, our Supreme Court overruled *Bullard*, 308 Mich App 403, in which, as noted above, this Court stated "[t]he mere fact that a plaintiff's employment might involve facing an open and obvious hazard does not make the open and obvious hazard effectively unavoidable." *Livings*, ___ Mich at ___; slip op at 16 n 16. The Court also overruled *Lymon v Freedland*, 314 Mich App 746; 887 NW2d 456 (2016), to the extent that it required courts to determine whether a particular job is "important" enough to justify risking the hazard. *Livings*, ___ Mich at ___; slip op at 16 n 16.

The *Livings* Court concluded that there was a genuine issue of material fact regarding whether the hazard was effectively unavoidable when the plaintiff confronted snow and ice in order to start her shift, and she presented evidence that snow and ice covered the entire parking lot, so she could not have avoided the condition. *Livings*, ___ Mich at ___; slip op at 16-17. In addition, leaving and returning or waiting in her car would have been tantamount to skipping work and, thus, not reasonable alternatives. *Id*. at ___; slip op at 17.

In this case, there is similarly a genuine issue of material fact regarding whether the hazard was effectively unavoidable. Plaintiff arrived at Rosenberg's house on the day of the incident for

a scheduled appointment to perform the work that she had been hired to do. Despite plaintiff having attempted to reschedule, Rosenberg insisted that plaintiff keep the appointment. When plaintiff arrived, she parked in the driveway. She observed that the driveway had been "somewhat plowed," but there were patches of snow still in the driveway. This is consistent with the photograph of the driveway taken by Rosenberg shortly before plaintiff arrived at her home. Plaintiff's employee also observed ice on the driveway. When plaintiff got out of her car and walked around the back of her car to get her supplies, she stated that she fell on either snow or ice.

As in *Livings*, there is no evidence presented that plaintiff could have used an alternative route to avoid the condition. She parked in and her fall occurred in the driveway, and there is no evidence of another route to reach the house. Even if she had parked in the street as her employee did, she would still have had to traverse the driveway. There was no testimony, nor does the photograph indicate, that another route to the house was available. Thus, the trier of fact could reasonably conclude that plaintiff confronted the condition to enter the location of her work for work purposes and she could not have avoided the condition by parking somewhere else.

Furthermore, as in *Livings*, plaintiff's option to forgo the job is not a reasonable alternative. Unlike the plaintiff in *Livings*, plaintiff actually attempted to postpone the job because of the weather, but Rosenberg insisted that plaintiff come and get the job done. Plaintiff's only other option was to not take the job.

While this case differs somewhat from *Livings* in that plaintiff was not, in a strict legal sense, an "employee" of Rosenberg, the analysis from *Livings* is appropriate. The *Livings* opinion refers to examples in which an owner of an office building would be subject to liability to a tenant's employee, as well as to a person injured while working for a third party on the defendant's premises. *Livings*, ___ Mich at ___; slip op at 9, 11. In this case, a reasonable premises possessor in Rosenberg's circumstances could reasonably foresee that plaintiff would confront the hazard, particular where, as here, Rosenberg insisted that plaintiff perform the work that day.

In sum, plaintiff has presented sufficient evidence that she confronted the snow and ice to enter her workplace for purposes of her employment. Rosenberg has not shown as a matter of law that any reasonable alternative would have allowed plaintiff to avoid the hazard. Thus, there is a genuine issue of material fact regarding whether the condition of the driveway was effectively unavoidable.

Having concluded there exists a genuine issue of material fact regarding whether the hazard was effectively unavoidable, it next becomes necessary to address defendant's claim that plaintiff failed to show notice. To establish a premises liability claim, "the plaintiff must be able to prove that the premises possessor had actual or constructive notice of the dangerous condition at issue." *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 12; 930 NW2d 393 (2018) (quotation marks and citation omitted). In order to show notice, the plaintiff must demonstrate that the defendant knew about the alleged condition or should have known of it because of its character or the duration of its presence. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 11; 890 NW2d 344 (2016), citing *Serinto v Borman Food Stores*, 380 Mich 637, 640-641; 158 NW2d 485 (1968).

In *Derbabian v S & C Snowplowing, Inc*, 249 Mich App 695, 706-707; 644 NW2d 779 (2002), this Court concluded that the plaintiff failed to establish that the defendant knew or should

have known of the icy condition of a parking lot when "it had not snowed for several days, had only rained a few hours before reverting to freezing temperature, the ice patch was only the size of two parking spaces, and no other person, including plaintiff, had observed the ice before the fall[.]" In *Altairi v Alhaj*, 235 Mich App 626, 640; 599 NW2d 537 (1999), this Court concluded that general knowledge of local weather conditions was insufficient to show that the defendant should have known that there was ice under the snow on his steps. The plaintiff failed to offer any evidence that the defendant actually saw the ice, that he saw someone slip, or that he even used the front door in the days immediately preceding the accident. *Id*.

Here, plaintiff presented evidence that Rosenberg took a photograph of the driveway shortly before plaintiff arrived. The photograph, consistent with plaintiff's testimony, showed the driveway had been partially plowed, but patches of snow remained. Thus, unlike in *Derbabian* and *Altairi*, there is direct evidence in this case that Rosenberg observed and was aware of the condition of the driveway on the morning of plaintiff's fall.

Rosenberg, however, counters that there was no evidence that she had notice of the particular ice that caused plaintiff to fall. In *Bragg v Daimler Chrysler*, unpublished per curiam opinion of the Court of Appeals, issued September 16, 2020 (Docket No. 290371), p 6,[3] the plaintiff submitted the affidavit of a meteorologist who opined that ice had been caused by below freezing temperatures and the presence of elevated humidity and fog, which began at approximately 4:40 a.m. on the day of the incident. This Court concluded that the meteorologist's opinion afforded no evidence that the defendant knew or should have known about the "specific icy patch" on which the plaintiff fell. *Id*. In that case, the plaintiff testified that the parking lot appeared to be clear of ice and snow and there had not been precipitation on the day of or before the plaintiff's fall. *Id*. In addition, the icy condition could only have been in existence for a maximum of an hour and a half before the plaintiff's fall. *Id*. at 7.

This case is distinguishable from *Bragg* because the evidence established that snow was visible on the driveway and it had been snowing all night and morning. Plaintiff does not merely rely on weather data, but evidence that Rosenberg was aware of the weather conditions, given her conversations with plaintiff, and had actually observed the condition of the driveway. Given the photograph taken by Rosenberg, as well the testimony that one of plaintiff's employee's observed ice on the driveway, there is a question of fact regarding whether Rosenberg had actual notice of the hazard that caused plaintiff to fall.

Even if Rosenberg did not have actual notice, there is a question of fact regarding constructive notice, i.e., whether Rosenberg should have been aware of the condition because of its character or duration of its presence. Again, this case is unlike *Altairi*, in which the plaintiff relied on general knowledge of the local weather conditions. Rather, plaintiff and Rosenberg had specifically discussed the snowstorm, which began the night before and continued into the morning. While there was no evidence that Rosenberg had observed anyone fall on the driveway, there was evidence she aware of the fact that the driveway would be slippery because she told

---

[3] While we recognize that unpublished opinions are not binding under the rule of stare decisis, they may be considered for their instructive of persuasive value. *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

plaintiff that the driveway would be plowed "so that it would be safe." Rosenberg's own photograph, however, showed that the driveway had not been fully plowed and plaintiff testified that no salt had been put down on the driveway. Under these circumstances, we conclude that there exists a question of fact as to whether Rosenberg should have known of the hazardous condition that caused plaintiff's fall.

Reversed and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs are awarded. MCR 7.219.

/s/ Michael J. Kelly
/s/ Stephen L. Borrello
/s/ Thomas C. Cameron